**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Virgie WASHINGTON, Defendant-Appellant.**

**No. 72-3038**

**Summary Calendar.**[*]

United States Court of Appeals, Fifth Circuit.

Jan. 11, 1973.

---

11. Brooks v. N.L.R.B., 348 U.S. 96, 103, 75 S.Ct. 176, 99 L.Ed. 125, 134 (1954); Jones & McKnight, Inc. v. N.L.R.B., 445 F.2d 97, 103 (7th Cir. 1971).

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

Harold Long, Jr., Wilkie D. Ferguson, Jr., Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Carol M. Anderson, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BELL, DYER and CLARK, Circuit Judges.

DYER, Circuit Judge:

This is an appeal from a judgment entered on an adjudication of guilt in a nonjury trial under 8 U.S.C.A. § 1324(a)(1) of bringing into and landing in the United States three aliens who were not duly admitted by an immigration officer or lawfully entitled to enter or reside in the United States. Finding the actions of Washington within the scope of those proscribed by Congress, we hold that the conviction under this section was proper and affirm.

Washington, while in the Bahamas, was approached separately by three Jamaican citizens who expressed a desire to come to the United States. In return for payments of $400, $440, and $450 from the respective aliens, Washington was to arrange for their entering the United States. Washington purchased four tickets to Fort Lauderdale, Florida, on a commercial airline. Each alien was given false identification papers and was instructed concernining their use in order to clear the United States Immigration and Naturalization Service offi-

cials. Two of the aliens were given their tickets for the flight, but Washington kept the ticket for the third alien and presented it to airline officials with her own when she boarded the plane. After landing at Fort Lauderdale, Washington and the three other passengers, all United States citizens, cleared Immigration, but the identities of the three aliens were discovered and they were held pending further investigation. This prosecution followed.

Washington was indicted under 8 U. S.C.A. § 1324(a)(1), not § 1324(a)(4), and her sole contention on appeal is that the Government failed to establish a prima facie case against her under the former section.[1] She argues that to be convicted of bringing aliens into or landing them in the United States, a private citizen must physically carry the aliens in some private means of transportation which is under the citizen's direct control. She therefore contends that the mere showing that a citizen accompanies an alien on a commercial airline to an authorized port of entry is not sufficient to violate section 1324(a)(1); she concedes, however, that this conduct might constitute encouragement or inducement to an alien which would violate section 1324(a)(4).

Washington attempts to support this statutory interpretation by asserting that certain immigration laws passed prior to 1907 were directed at the activities of ship's officers, by further stating that section 1324(a)(1)'s predecessor, section 8 of the Immigration Act of 1907, 34 Stat. 900, as amended by section 8 of the Immigration Act of 1917, 39 Stat. 880, 8 U.S.C.A. § 144, was limited to smuggling, and finally by arguing that this case is controlled by McFarland v. United States, 6 Cir. 1927, 19 F.2d 805. In *McFarland* the defendant had given his son false identification papers and had then accompanied him to the United States on a commercial ferry. The Sixth Circuit reversed the conviction and held that under those facts, the alien had not been "brought in" within the contemplation of section 8 of the Immigration Act of 1917. These arguments and the *McFarland* opinion, to the extent that it supports Washington's statutory interpretation, are not persuasive.

We begin by recognizing that section 1324, like all penal statutes, should be strictly construed. *See* United States v. Orejel-Tejeda, N.D.Cal.1961, 194 F.Supp. 140. We also note, however, that the general purpose of this section of the Immigration and Nationality Act of 1952 was to prevent aliens from entering or remaining in the United States illegally. *See* H.R.Rep.No. 1377, 2 U.S.Code Cong. & Admin.News, 82d Cong., 2d Sess., at p. 1358 (1952). Thus, in addition to being employed against agents of commercial carriers, section 1324(a)(1) and its predecessors have been used to prosecute private citizens who have brought aliens in by piloting a small boat, Campbell v. United States, 5 Cir. 1931, 47 F.2d 70; by driving a private automobile, United States v. Harding, 9 Cir. 1970, 432 F.2d 1218; and by piloting a small plane. Bland v. United States, 5 Cir. 1962, 299 F.2d 105. The precise question for our determination, then, is whether there is any compelling reason for limiting the section's application against private citizens to those whose activities involve the per-

---

1. Section 1324 provides in pertinent part:

    (a) Any person, including the owner, operator, pilot, master, commanding officer, agent, or consignee of any means of transportation who—
    (1) brings into or lands in the United States, by any means of transportation or otherwise, or attempts, by himself or through another, to bring into or land in the United States, by any means of transportation or otherwise; . . . or

    (4) willfully or knowingly encourages or induces, or attempts to encourage or induce, either directly or indirectly, the entry into the United States of—
    any alien, including an alien crewman, not duly admitted by an immigration officer or not lawfully entitled to enter or reside within the United States under the terms of this chapter or any other law relating to the immigration or expulsion of aliens, shall be guilty of a felony. . . .

sonal operation or direct control of a vehicle. We think that there is no basis for such a limitation.

The portion of section 1324 which is at issue reads:

> (a) *Any* person, *including* the owner, operator, pilot, master, commanding officer, agent, or consignee of any means of transportation who—
>
> (1) brings into or lands in the United States, by *any* means of transportation or *otherwise*. . . . (Emphasis added.)

It is clear that in the first phrase the words "any person" apply to a class of persons larger than the list of enumerated examples and are not limited to owners or operators. It is equally clear that the second phrase does not limit the section's application to forms of transportation actually operated or controlled by the defendant. The Ninth Circuit, in Carranza-Chaidez v. United States, 9 Cir. 1969, 414 F.2d 503, has interpreted these phrases as being broad enough to include a defendant who employs no vehicular transportation, but who masterminds the operation and who provides a guide so that illegal aliens can walk into the United States. Like the Ninth Circuit, we reject an interpretation of the section which would unduly limit its intended breadth and hold that a private citizen who uses a public conveyance to bring an alien into or land one in the United States may be convicted under section 1324(a)(1).[2]

■ Our final inquiry is directed to a determination of whether Washington's participation in getting the aliens to the United States is sufficient to fall within the phrase "brings into or lands in the United States." We think that the *McFarland* court correctly viewed these terms as requiring active conduct on the part of a defendant. It

went on to say that "[the verbs] are appropriate to one who transports, and are distinctly inappropriate, *although not necessarily inapplicable*, to one who persuades or aids the immigrant *to take himself* by public conveyance up to the inspection line for examination, whether or not he gets through." 19 F.2d at 806 (emphasis added). Thus, the Sixth Circuit acknowledged that the section *might, in a proper case, be applied to* one who uses some public means of transportation to get the alien into the United States.

■ Here Washington took money from each alien, gave each of them false identification, instructed each of them on how to use the identification to clear immigration officials, decided on the means of transportation to be used in reaching the United States, purchased airline tickets to the United States for each of them, personally handled the presentation to the airline of at least one alien's ticket, accompanied them to the United States, and waited for them at the airport until one of them was detained for failing to pass an initial inspection. This goes beyond the conduct found not to violate the section in the *McFarland* case and it cannot reasonably be said to be a case in which the aliens independently "took themselves" up to the inspection line. Washington argues that this conduct is not sufficient to constitute bringing in or landing, but conceded at trial that if Washington had *chartered* a plane for the four of them, she would have violated section 1324(a)(1). We can find no support for this technical distinction. *Cf.* Middleton v. United States, 5 Cir. 1929, 32 F.2d 239. Washington's conduct, as shown in the record, demonstrates ample personal activity to warrant conviction under section 1324(a)(1).

Affirmed.

2. Even if *McFarland* were thought to be persuasive, our decision would still be supportable because the pertinent section has been amended and broadened since 1926. At that time, the section read in part: "That any person, including the master, agent, owner, or consignee of any vessel who shall bring into or land in the

United States, by vessel or otherwise. . . ." The current language, "by any means of transportation or otherwise", makes an interpretation which limits the meaning of "or otherwise" to only certain forms of transportation an unreasonable reading of the statute.