### UNITED STATES of America, Plaintiff-Appellee,

v.

### Gormanston WISHART, Defendant-Appellant.

### No. 442, Docket 77–1329.

United States Court of Appeals, Second Circuit.

Argued Nov. 29, 1977.

Decided Aug. 9, 1978.

---

Mark J. Mahoney, Buffalo, N.Y. (Doyle, Diebold, Bermingham, Gorman & Brown, Buffalo, N.Y.), for defendant-appellant.

Theodore J. Burns, Asst. U.S. Atty., Buffalo, N.Y. (Richard J. Arcara, U.S. Atty., W.D.N.Y., Buffalo, N.Y., of counsel), for plaintiff-appellee.

Before WATERMAN, MOORE and GURFEIN, Circuit Judges.

WATERMAN, Circuit Judge:

This is an appeal from a judgment of conviction entered in the United States District Court for the Western District of New York after a jury trial. Defendant-appellant Gormanston Wishart was convicted on charges of having unlawfully brought an alien into the United States in violation of 8 U.S.C. § 1324 [1] and of conspiracy to commit

1. § 1324. Bringing in and harboring certain aliens; persons liable; authority to arrest

(a) Any person, including the owner, operator, pilot, master, commanding officer, agent, or consignee of any means of transportation who—

(1) brings into or lands in the United States, by any means of transportation or otherwise, or attempts, by himself or through another, to bring into or land in the United States, by any means of transportation or otherwise;

(2) knowing that he is in the United States in violation of law, and knowing or having reasonable grounds to believe that his last entry into the United States occurred less than three years prior thereto, transports, or moves, or attempts to transport or move, within the United States by means of transportation or otherwise, in furtherance of such violation of law;

(3) willfully or knowingly conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, in any place, including any building or any means of transportation; or

(4) willfully or knowingly encourages or induces, or attempts to encourage or induce, either directly or indirectly, the entry into the United States of—

any alien, including an alien crewman, not duly admitted by an immigration officer or not lawfully entitled to enter or reside within the United States under the terms of this chapter or any other law relating to the immigration or expulsion of aliens, shall be guilty of a felony, and upon conviction thereof shall be punished by a fine not exceeding $2,000 or by imprisonment for a term not exceeding five years, or both, for each alien in respect to whom any violation of this subsection occurs: *Provided, however,* That for the purposes of this section, employment (including the usual and normal practices incident to employment) shall not be deemed to constitute harboring.

(b) . . .

that substantive offense.[2] Upon his convictions Wishart was sentenced to concurrent fifteen-month prison terms. The sole issue raised on this appeal is whether the district court erred by refusing to grant Wishart's request to give the jury a lesser-included-offense instruction. The instruction Wishart requested would have permitted the jury to find him guilty of conspiracy to violate 8 U.S.C. § 1325,[3] a misdemeanor, by virtue of his having conspired to obtain the unlawful entry of an alien into the United States by means of false or misleading representations, in lieu of their convicting him, as they ultimately did, of conspiring to violate 8 U.S.C. § 1324, a felony, by virtue of his having conspired to "bring" an alien into the United States unlawfully. We find that the refusal to grant Wishart's request to have the lesser-included-offense instruction given was proper, and we affirm the judgment of conviction.

2. The indictment against Wishart read as follows:

COUNT I

The Grand Jury Charges:

That beginning on or about the 7th day of January 1977 and continuing through the 8th day of January 1977, in the Western District of New York and elsewhere the defendants Gormanston Wishart and Lloyd H. Miller did unlawfully combine, conspire and agree together with each other and with Harri Prashad, named herein as a co-conspirator but not a co-defendant, to commit an offense against the United States, to wit, to violate Title 8, United States Code, Section 1324(a)(1), by unlawfully bringing Harri Prashad into the United States; in violation of Title 18, United States Code, Section 371.

OVERT ACTS

At the times hereinafter mentioned, the defendants committed the following overt acts in furtherance of said conspiracy and to effect the objects thereof:

1. On or about the 7th day of January 1977, the defendant Gormanston Wishart met with Harri Prashad at a residence in Kitchener, Ontario.

2. On or about the 7th day of January 1977, the defendants Gormanston Wishart and Lloyd H. Miller travelled from Kitchener, Ontario to Fort Erie, Ontario.

3. On or about the 8th day of January 1977, the defendant Gormanston Wishart rented a room at the Fort Villa Motel in Fort Erie, Ontario.

4. On or about the 8th day of January 1977, the defendant Lloyd H. Miller gave Canadian Immigration Identification Record No. G6341602 to the defendant Gormanston Wishart in Fort Erie, Ontario.

5. On or about the 8th day of January 1977, the defendant Gormanston Wishart drove an automobile across the Peace Bridge in Buffalo, New York with Harri Prashad.

6. On or about the 8th day of January 1977, the defendants Gormanston Wishart and Lloyd H. Miller travelled from Niagara Falls, New York to the Greyhound Bus Station in Buffalo, New York.

COUNT II

The Grand Jury Further Charges:

That on or about the 8th day of January 1977 at the Peace Bridge, Buffalo, New York, in the Western District of New York, the defendant Gormanston Wishart unlawfully did bring into the United States by means of an automobile Harri Prashad, an alien not lawfully entitled to enter or reside within the United States; in violation of Title 8, United States Code, Section 1324(a)(1).

At the time and place aforesaid, the defendant Lloyd H. Miller did aid, abet, counsel, command, induce and procure the offense alleged herein; in violation of Title 8, United States Code, Section 1324(a)(1) and Title 18, United States Code, Section 2.

COUNT III

The Grand Jury Further Charges:

That on or about the 8th day of January 1977 at the Peace Bridge, Buffalo, New York, in the Western District of New York, the defendant Gormanston Wishart did willfully and knowingly encourage the entry into the United States of Harri Prashad, an alien not lawfully entitled to enter or reside within the United States; in violation of Title 8, United States Code, Section 1324(a)(4).

At the time and place aforesaid, the defendant Lloyd H. Miller did aid, abet, counsel, command, induce and procure the offense alleged herein; in violation of Title 8, United States Code, Section 1324(a)(4) and Title 18, United States Code, Section 2.

COUNT IV

The Grand Jury Further Charges:

That on or about the 8th day of January, 1977, in Buffalo, New York in the Western District of New York, the defendant Gormanston Wishart did forcibly assault, resist, oppose, impede, intimidate and interfere with David M. Robinson, an Immigration Officer, while the said officer was engaged in the performance of his official duties; in violation of Title 18, United States Code, Sections 111 and 1114.

The district court dismissed Count III at the close of the government's case and the jury acquitted Wishart of the charges contained in Count IV.

3. § 1325. Entry of alien at improper time or place; misrepresentation and concealment of facts

Any alien who (1) enters the United States at any time or place other than as designated by immigration officers, or (2) eludes exami-

Count II of the indictment upon which Wishart was prosecuted alleged that he had violated 8 U.S.C. § 1324(a)(1) in that he "unlawfully did bring into the United States by means of an automobile Harri Prashad, an alien not lawfully entitled to enter or reside within the United States." Count I of the indictment alleged a conspiracy, of which Wishart, Prashad and one Lloyd Miller were members, to violate 8 U.S.C. § 1324(a)(1) "by unlawfully bringing Harri Prashad into the United States." The conspiracy count then alleged six discrete overt acts.[4] Of these six, the ones of most interest to us here are the fourth and fifth. The fourth overt act asserted to have been taken in furtherance of the conspiracy and to effect the objectives of that conspiracy was that "[o]n or about the 8th day of January 1977, the defendant Lloyd H. Miller gave Canadian Immigration Identification Record No. G6341602 to the defendant Gormanston Wishart in Fort Erie, Ontario." The fifth overt act was alleged to have occurred when "[o]n or about the 8th day of January 1977, the defendant Gormanston Wishart drove an automobile across the Peace Bridge in Buffalo, New York with Harri Prashad."

The government's proof at trial was presented primarily through the testimony of Prashad, the alien whom the government claimed had been brought into the United States illegally, and Lloyd Miller, Wishart's confederate in the scheme to bring Prashad into this country. Prashad, a citizen of Guyana, testified that he had lived in Canada since 1975 but that before the incidents in question here the Canadian government had ordered that he leave Canada. After this order Prashad approached Wishart and asked him to help Prashad to enter the United States. Wishart replied that he could provide such assistance by securing a friend's (i. e., Miller's) Canadian immigration papers but that Prashad would have to pay for the service. Later that same day, Wishart called Prashad and told him that he would arrive at Prashad's apartment in a short while and would drive Prashad into the United States. Accordingly, Wishart met Prashad at the latter's apartment and the two of them then drove to meet Miller at another apartment. After Miller had joined Wishart and Prashad, the three men drove to a motel on the Canadian side of the border between the United States and Canada and Wishart rented a room at the motel. While there, upon being requested to do so by Wishart, Miller gave Wishart his Canadian landed immigrant papers, documents which would permit Miller legally to enter the United States and which Prashad would use to gain entry illegally. Having received the papers from Miller, Wishart handed them to Prashad. After Wishart told Prashad that Miller would remain in the motel room with Prashad's luggage while Wishart drove Prashad across the border to Buffalo, Wishart and Prashad left the rented room and Wishart then drove Prashad across the border to a bus terminal in Buffalo. Miller, who also testified for the government, generally corroborated Prashad's story, although he was not able of course to provide the direct, and convincing, evidence Prashad testified to that Wishart had personally transported Prashad across the border to Buffalo in an automobile.

After returning to the motel room to pick up Miller and three suitcases belonging to Prashad, Wishart, accompanied now by Miller, returned to Buffalo to take Prashad's luggage to him. Unbeknown to Wishart and Miller, however, Prashad had already been apprehended by U.S. immigration authorities and Wishart and Miller were ar-

---

nation or inspection by immigration officers, or (3) obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact, shall, for the first commission of any such offenses, be guilty of a misdemeanor and upon conviction thereof be punished by imprisonment for not more than six months, or by a fine of not more than $500, or by both, and for a subsequent commission of any such offenses shall be guilty of a felony and upon conviction thereof shall be punished by imprisonment for not more than two years, or by a fine of not more than $1,000, or both.

4. *See* note 2 *supra*.

rested while searching for Prashad at the bus terminal where they were to rendezvous with him.

 Turning now to the legal issue raised on appeal, we note initially that "[i]t is settled that the defendant has a right to an instruction on a lesser-included offense under certain circumstances." *United States v. Crutchfield*, 547 F.2d 496, 499 (9th Cir. 1977). "[I]n order to be entitled to the instruction, the defendant must [demonstrate] that the offense on which the instruction is sought is a lesser-included offense in the offense charged [in the indictment], and . . . that the jury could rationally conclude that the defendant was guilty of the lesser but not the greater offense." *Id.* at 500; accord, *United States v. Harary*, 457 F.2d 471, 477 (2d Cir. 1972);[5] *United States v. Seijo*, 537 F.2d 694, 699 (2d Cir. 1976), *cert. denied*, 429 U.S. 1043, 97 S.Ct. 745, 50 L.Ed.2d 756 (1977). Under the circumstances here, the only basis upon which we could conceivably rule as Wishart would have us rule, that a conspiracy to violate 8 U.S.C. § 1325 is indeed a lesser-included offense of a conspiracy to violate 8 U.S.C. § 1324 precludes us from finding that the jury could rationally have concluded that Wishart was guilty of the lesser (i. e., the conspiracy to obtain the entry of an alien by a willfully false or misleading representation in violation of § 1325) but not the greater offense (i. e., the conspiracy to bring an alien into the United States unlawfully in violation of § 1324).

As pertinent here, a violation of § 1324(a) occurs when "[a]ny person . . . brings into . . . the United States, *by any means of transportation or otherwise*, . . . any alien . . . not lawfully entitled to enter or reside within the United States." (Emphasis supplied.) Here, on the basis of Count II of the indictment, the count charging the substantive offense of unlawfully bringing an alien into the United States, the government clearly was proceeding, through the proof it adduced at trial, on the theory that Wishart had violated this section by transporting Prashad across the border in Wishart's automobile (i. e., "by any means of transportation"). With reference, however, to Count I of the indictment, the count charging a conspiracy to violate § 1324, it *perhaps* could be argued that the government was proceeding under alternative theories of how Wishart had conspired to "bring" an alien into the United States unlawfully. The language charging the unlawful agreement itself is neither specific nor informative; it merely states that the three men conspired to violate § 1324 "by unlawfully bringing Harri Prashad into the United States." Certainly, one theory, the theory the government satisfactorily proved to be based upon facts, as to the conspirators' plan of action is evident from the government's inclusion in the indictment of overt act five and from the proof at trial. The government attempted to prove, and to the satisfaction of the jury did prove, a conspiracy to violate § 1324 by showing that there had been an agreement between the confederates to bring Harri Prashad into the United States by a particular "means of transportation," namely, in an automobile. On such a theory § 1325, insofar as it pertains to the use of false or misleading representations to gain entry into the United States, would in no way be implicated and a conspiracy to violate that provision would therefore not be a lesser-included offense of a conspiracy to violate § 1324, the conspiracy specifically charged in Count I of the indictment.

It is also possible, however, to discern in the pleadings and proof a somewhat more innovative and imaginative alternative the-

---

5. To satisfy this latter condition, the defendant must show that the "charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense." *United States v. Seijo*, 537 F.2d 694, 698 n.5 (2d Cir. 1976), *cert.* *denied*, 429 U.S. 1043, 97 S.Ct. 745, 50 L.Ed.2d 756 (1977), quoting *Sansone v. United States*, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); *accord, United States v. Markis*, 352 F.2d 860, 867 (2d Cir. 1965).

ory the government might have relied upon to show that Wishart had conspired with the others to violate § 1324. In enlarging upon this thought it is important to notice three things. First, the language in Count I describing the purpose of the conspirators' unlawful plan supplies absolutely no details of the alleged conspiratorial agreement. Second, overt act four focused on Miller's having given Prashad Miller's immigration papers. Finally, the testimony the government produced at trial established that Miller was providing Prashad with these papers so that Prashad, by representing Miller's papers to be Prashad's, could gain illegal entry into the United States. So, it could perhaps be rationally argued that the government, in order to prove the conspiracy to violate § 1324, was also relying upon a theory that the illicit agreement here was an agreement to bring an alien unlawfully into the United States by some means *other than* physical transportation of the alien (or, in the language of the statute, "by any means of transportation *or otherwise*," (emphasis supplied)), namely, "by means of" misleading or false representations. If the government relied upon such a theory, as it conceivably might have done here,[6] to obtain a conviction on the charge of conspiracy to violate § 1324, then a conspiracy to violate § 1325 would indeed be a lesser-included offense of the offense of conspiracy to bring an alien into the United States unlawfully because a conviction of conspiracy to violate § 1324, obtained on the basis of such a theory, would necessarily involve proof that would also establish a conspiracy to violate § 1325. Thus, assuming this was a government approach to the case, Wishart

would have surmounted the initial obstacle to his securing from the district court the lesser-included-offense instruction he desired.

However, assuming arguendo that by virtue of the preceding line of reasoning Wishart could have persuaded us that, on the facts of this case, a conspiracy to violate § 1325 is a lesser-included offense of a conspiracy to violate § 1324, he fulfills that first condition by relying upon a theory which makes it impossible for him to demonstrate, as he must if he is to establish his entitlement to the lesser-included-offense instruction he seeks, that "the jury could rationally conclude that [he] was guilty of the lesser [i. e., a conspiracy to violate § 1325] but not the greater offense [i. e., the conspiracy to violate § 1324]." *United States v. Crutchfield, supra,* 547 F.2d at 500. Using the innovative theory discussed above, where the unlawful "bringing" of the alien into the United States would be accomplished by means of the use of false or misleading representations, and not by actual physical transportation, it is obvious that the conspiracy to violate § 1325 becomes the special type of lesser-included offense which is established not merely by proof of some but rather "by proof of *all* . . . of the facts required to establish the greater offense." *United States v. Harary, supra,* 457 F.2d at 474 n.6; *United States v. Seijo, supra,* 537 F.2d at 698 n.4. Thus, since under this theory a conspiracy to violate § 1325 "is [not] a circle included within [a conspiracy to violate § 1324 but rather] is congruent therewith," *United States v. Markis,* 352 F.2d 860, 866 (2d Cir.

---

**6.** At page 13 of its brief on appeal here the government points out that "[t]he language [of § 1324] is sufficiently broad to cover situations where the smuggler does not personally bring the alien into the United States. The language has been interpreted to include within its reach a defendant who masterminds a smuggling operation but does not actually provide the alien's transportation into the United States. *Carranza-Chaidez v. United States,* 414 F.2d 503 (9th Cir. 1969); and *United States v. Washington,* 471 F.2d 402, 405 (5th Cir. 1973) [, *cert. denied,* 412 U.S. 930 (93 S.Ct. 2759, 37 L.Ed.2d 158)

(1973)]." With reference to this government argument it is clear that as actual personal transportation of the alien by the defendant is not required for a conviction under § 1324, then proof of conspiracies to violate § 1324 and § 1325 would appear to cover "precisely the same ground". *Sansone v. United States,* 380 U.S. 343, 350, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965). So, whether Wishart intended personally to transport Prashad would not be a disputed factual element sufficient to justify a lesser-included-offense instruction on the conspiracy count.

1965) (Friendly, J.), and a defendant is entitled to a lesser-included-offense instruction only if "the lesser offense [is] included within but [is] not, on the facts of the case, . . . completely encompassed by the greater," *Sansone v. United States*, 380 U.S. 343, 350, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965), the jury here could not rationally have acquitted Wishart on the greater offense, the conspiracy to violate § 1324, while simultaneously convicting him on the lesser-included offense, the conspiracy to violate § 1325 for there is complete congruence of the proof. We therefore hold that the district court did not err by refusing to grant Wishart's request to charge the jury that, under the facts of this case, Wishart could be convicted of a conspiracy to violate § 1325 [7] instead of a conspiracy to violate § 1324.[8]

The judgment order of conviction is affirmed.

---

**7.** We note also that on the record here the only basis for finding that a conspiracy existed to violate § 1325 would be that there had been an unlawful agreement to have Prashad gain entry into the United States by using false and misleading representations.

**8.** Although Wishart has not challenged his conviction on Count II of the indictment upon which he was sentenced to serve a fifteen-month prison term to run concurrently with the fifteen-month prison terms sentence imposed upon his Count I conviction, the government has not urged that we truncate full appellate review by invoking the "concurrent sentence" doctrine. The government's position may perhaps be attributable to the fact that in this circuit "utilization of the concurrent sentence doctrine is now the exception rather than the rule." *United States v. Ruffin*, 575 F.2d 346, 361 (2d Cir. 1978).