**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Rafique ASLAM, Defendant–Appellant.**

Magistrate No. 56990.

United States District Court,
N.D. New York.

Aug. 10, 1990.

Gleason, Dunn, Walsh & O'Shea, Albany, N.Y., for defendant-appellant (Meave M. Tooher, of counsel).

Frederick J. Scullin, Jr., U.S. Atty., Albany, N.Y., for plaintiff-appellee (William C. Perichak, of counsel).

## MEMORANDUM DECISION AND ORDER

CHOLAKIS, District Judge.

Defendant–Appellant Rafique Aslam appeals to this Court pursuant to 18 U.S.C. § 3402, from a judgment of conviction entered after a bench trial before United States Magistrate Ralph W. Smith, Jr. Before the Court addresses the merits of the appeal, the following recitation of the facts is necessary.

At around 7:00 PM on January 16, 1990, a sensor alerted border patrol agents of a possible illegal entry into this country from Canada. Two agents, Dennis C. Doody and Jonathan Steblein, converged on an area in the Village of Rouses Point known as "The Knuckle," where illegal entries had occurred in the past. Steblein headed in the direction of the point of entry, while Doody headed toward the "cut-off point." Doody was following a car with New Jersey license plates as he headed toward the cut-off point, when appellant, the driver of the car, negotiated a U–Turn and approached two individuals who had been walking on the road in the opposite direction. Agent

Doody stopped the car and the two individuals turned out to be Jalal Khan and Malik Mohammad Younas, two illegal aliens (Pakistani nationals) who had entered the United States on foot. Agent Steblein tracked footprints in the snow which matched those of Khan and Younas. When he reached the point of entry, Steblein found three sets of footprints, the third being of an alleged guide who turned back into Canada and was apparently driven off in a car.

When Agent Doody stopped appellant, Khan and Younas were walking on the street, and were not in appellant's car. Appellant stated to Doody that he was looking for pizza, and had become lost in the snow storm (approximately three inches of snow had fallen that night). Doody took in Younas and Khan, and directed appellant (a Pakistani with legal residence in New Jersey) to follow him back to the Anchorage Motel in Rouses Point, where appellant was staying with a friend, one Mr. Ahmed (or Mahmed), who had visas for stays in the United States and Canada. By this time, Agent Steblein was on the scene, and he followed appellant's vehicle to the motel. Ahmed acted as an English–Urdu interpreter at the motel. At the motel, Younas admitted in English that he was in the country illegally. Khan also made the same admission through Ahmed.[1] While the parties were at the motel, the phone rang, and appellant answered. In Urdu, he apparently told the caller that the "police were here."[2] At this point, appellant was arrested.

In a criminal complaint dated January 17, 1990, appellant was charged with violating 8 U.S.C. § 1324(a)(2)(A), which provides

Any person who, knowing or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States, *brings to* or *attempts to bring to* the United States in any manner whatsoever, such alien, regardless of any official action which may later be taken with respect to such alien shall, for each transaction constituting a violation of this paragraph, regardless of the number of aliens involved—

(A) be fined in accordance with title 18, United States Code, or imprisoned not more than one year, or both ...

(Emphasis added). Appellant consented to a trial before Magistrate Smith, and waived his right to a jury trial. During trial, which was held February 8, 1990, the Government presented the following scenario—Younas and Khan were driven by the "drop vehicle" in Canada to the border. From the border, the two walked along with a guide through the woods until they had reached the United States. The guide then returned by foot to Canada, and was driven off in the drop vehicle. Appellant drove the "pick-up vehicle," and was to have picked up Younas and Kahn and driven them away from the border into the United States. Once defendant saw Younas and Khan, he negotiated a U–Turn, in order to pick them up. Doody caught appellant, Khan and Younas at this point.

Appellant's version of the facts was as follows—He drove up on the 16th with his friend Ahmed, who was to meet his friend Ashrad (a Pakistani living in Toronto) at the border. Defendant had a 9:30 PM flight out of New York to Pakistan on the following evening. The two had arrived at the Anchorage Motel at around 4:00 PM, and appellant decided to go out to look for pizza. He misunderstood the directions that he was given, and passed the pizza shop, which was approximately one-quarter of a mile down the road from the motel. He then entered a residential section, and decided to turn around to retrace his tracks. It was at this point that Doody stopped him.

At trial, appellant objected to, *inter alia*, the use of Ahmed as an interpreter. Ahmed was not charged and was not present at trial. Defendant also objected to the use of any of Younas' and Khan's statements. Magistrate Smith overruled these objections. On February 9, 1990,

---

1. Ahmed was able to translate on paper from English to Urdu, as he translated Miranda warnings for Doody and Steblein.

2. Ahmed interpreted this statement for Doody and Steblein.

Magistrate Smith found appellant guilty of violating 8 U.S.C. § 1324(a)(2)(A), and sentenced him to time already served (10 days), fined him $2,000.00 (the forfeiture of bail money which appellant had already paid) and imposed a $25.00 assessment.

■ Defendant now appeals to the District Court, which reviews the judgment before the Magistrate in the same manner as the Circuit reviews District Court decisions. *United States v. Robinson*, 523 F.Supp. 1006, 1012 (E.D.N.Y.1981), *aff'd*, 685 F.2d 427 (2d Cir.1982). The Court must determine, viewing the evidence in a light most favorable to the Government, and drawing all permissible inferences in the Government's favor, whether there is substantial evidence to support the Magistrate's findings. *United States v. Rastelli*, 870 F.2d 822, 827 (2d Cir.1989); *United States v. Rodriguez*, 702 F.2d 38, 41 (2d Cir.1983). The appellate court must determine whether the Magistrate may fairly and logically have concluded that appellant was guilty beyond a reasonable doubt. *United States v. Torres*, 901 F.2d 205, 216 (2d Cir.1990); *United States v. Campino*, 890 F.2d 588, 594 (2d Cir.1989); *United States v. Macklin*, 671 F.2d 60, 66 (2d Cir.1982); *United States v. Taylor*, 464 F.2d 240, 243 (2d Cir.1972). Appellant's burden in challenging the sufficiency of the evidence is indeed a heavy one. *United States v. Villegas*, 899 F.2d 1324, 1339 (2d Cir.1990), *aff'g*, 700 F.Supp. 94 (N.D.N.Y. 1988); *United States v. Roman*, 870 F.2d 65, 71 (2d Cir.1989).

■ The Court need only address appellant's first contention on appeal, for in this Court's judgment, that contention merits reversal of appellant's conviction. Appellant was charged with and convicted of violating 8 U.S.C. § 1324(a)(2)(A), which

prohibits the *bringing in* of or the attempt to bring illegal aliens into this country. The Assistant United States Attorney stressed to Magistrate Smith that the Government was seeking a conviction of attempting to bring illegal aliens into the United States. The Court quotes the following excerpts from the trial transcript:

> That Mr. Aslam *attempted to bring* them into the United States by means of transportation with an automobile ... (Transcript ("Tr."), at 26).

> ... I think that the government has carried it's [sic] burden of proving beyond a reasonable doubt that Defendant Aslam was guilty *as charged of attempting to bring* these aliens into the United States by means of his automobile. (Tr., at 213).

> ... the charges (sic)[3] that he *attempted to bring* ... into the United States so there's no need for the government to prove that he actually put them in the car ... (Tr., at 218).

(Emphasis added). The Court has thoroughly reviewed the trial transcript and the cases cited by parties in their appellate briefs. Furthermore, the Court has conducted its own research in this area. In this Court's judgment, appellant was improperly convicted under 8 U.S.C. § 1324(a)(2)(A).

Appellant argues that the facts are insufficient to support a conviction under the above subsection, and this Court agrees.[4] Every fact at trial showed that appellant's allegedly illegal activities occurred solely within the United States. The government took the position that appellant drove the "load car," which was the car that was to pick up the aliens in the United States.[5] The Court agrees with appellant's counsel that the evidence at trial was directed to-

---

**3.** Should be "charge is."

**4.** The Government argued in its brief that appellant had waived the right to make this argument, on the basis that it was not raised before Magistrate Smith. At oral argument, which was held on July 6, 1990, the Government withdrew this assertion. In either case, the Court cites to the following statement from appellant's counsel: "There have been no hard facts to show that

Mr. Aslam in any way committed the crime charged." Tr., at 213–214.

**5.** Of necessity, the aliens would had to have entered the United States before they could have been picked up by appellant. The Court is mystified by the argument presented by the government at trial that this activity could amount to "attempting to bring into the United States."

ward proving that appellant violated 8 U.S.C. § 1324(a)(1)(B), which provides:

Any person who—

(B) knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, *transports*, or *moves* or *attempts to transport or move* such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law; ... shall be fined in accordance with title 18, United States Code, imprisoned not more than five years, or both, for each alien in respect to whom any violation of this subsection occurs.

(Emphasis added). While the Government may have erred in charging the wrong violation,[6] this Court cannot affirm appellant's conviction on grounds not presented before the Magistrate. *See Chiarella v. United States*, 445 U.S. 222, 236, 100 S.Ct. 1108, 1118–19, 63 L.Ed.2d 348 (1980). Section 1324 of Title 8 of the United States Code is a penal statute, and as such, must be strictly construed against the Government and in favor of the defendant. *United States v. Washington*, 471 F.2d 402, 404 (5th Cir. 1972), *cert. denied*, 412 U.S. 930, 93 S.Ct. 2759, 37 L.Ed.2d 158 (1973); *United States v. Moreno–Duque*, 718 F.Supp. 254, 259 (D.Vt.1989); *United States v. Orejel–Tejeda*, 194 F.Supp. 140, 143 (N.D.Cal.1961). Therefore, the Court must determine whether appellant's conviction for attempting to bring illegal aliens into the United States was proper.

The Government attempts to equate appellant to that of the driver of a getaway car in a bank robbery, and cites a plethora of cases which stand for the proposition that the driver of the getaway car is a principal to the bank robbery, which continues through the escape phase. *United States v. Grubczak*, 793 F.2d 458, 464 (2d Cir.1986); *United States v. McCaskill*, 676 F.2d 995, 1000–1001 (4th Cir.1982); *United States v. Wilkins*, 659 F.2d 769, 773 (7th Cir.1981); *United States v. Willis*, 559 F.2d 443, 444 n. 5 (5th Cir.1977); *United States v. Von Roeder*, 435 F.2d 1004, 1010 (10th Cir.1970); *United States v. Simmons*, 281 F.2d 354, 360 (2d Cir.1960) (en banc). All of the above cases confer guilt under 18 U.S.C. § 2113 to the driver of the getaway car under an aiding and abetting theory. No provision within section 2113 of Title 18 specifically makes "driving the getaway car" a crime. As such, 18 U.S.C. § 2, the aiding and abetting statute, is the means by which the driver of the getaway car is held responsible for the bank robbery. In the case at bar, however, the same argument cannot be made. Assuming, *arguendo*, that appellant is akin to the driver of the getaway car, appellant can be charged with 8 U.S.C. § 1324(a)(1)(B), which specifically makes illegal "driving the getaway car" when the car contains illegal aliens, as opposed to stolen money. The Court rejects the Government's invitation to equate appellant to the driver of the getaway car in a bank robbery.

 The cases are clear in holding that to be held to have violated 8 U.S.C. § 1324(a)(2)(A), a defendant must have assisted in the physical ingress into the United States. *United States v. Washington*, 471 F.2d 402, 404 (5th Cir.1973); *McFarland v. United States*, 19 F.2d 805, 806 (6th Cir.1927); *United States v. Anaya*, 509 F.Supp. 289, 295 (S.D.Fla.1980) (en banc). The defendant need not have actually been present during the time at which the illegal entry was made, if he can be considered the mastermind of a scheme to import illegal aliens. *United States v. Wishart*, 582 F.2d 236, 241 n. 6 (2d Cir. 1978); *Claramont v. United States*, 26 F.2d 797, 797 (5th Cir.1928). Use of a guide to bring aliens across the border on foot has been considered sufficient to satisfy the "by any means of transportation or otherwise" language of the predecessor of 8 U.S.C. § 1324(a)(2)(A). *Carranza–Chaidez v. United States*, 414 F.2d 503, 505 (9th

---

**6.** In a case with facts rather similar to those at bar, the Government alleged (and proved) a violation of 8 U.S.C. § 1324(a)(1)(B), not 8 U.S.C. § 1324(a)(2)(A). *See United States v. Szymaniak*, No. 90–CR–61 (N.D.N.Y.1990), which resulted in a guilty verdict on July 26, 1990. In *Szymaniak*, defendant was driving a purported "load vehicle," and was found in the vicinity of an illegal alien (of same nationality) who had set off the border sensor.

Cir.1969). The Government attempts to argue that the "or otherwise" language of § 1324(a)(2)(A) is satisfied by acts which may be consistent with transportation *within* the United States. As the Government would have it, there would be no need to distinguish between §§ 1324(a)(2)(A) and 1324(a)(1)(B), as every person who allegedly transports within the United States could be charged with violating 8 U.S.C. § 1324(a)(2)(A). The Court refuses to construe the two sections in the loose fashion that the Government suggests.

The Government makes one final attempt to save this improper conviction, by arguing that appellant can be held responsible as a principal under 18 U.S.C. § 2, for aiding and abetting the attempted importation of illegal aliens. "[O]ne who has been indicted as a principal may be convicted on evidence showing that he merely aided and abetted the commission of the offense." *United States v. Walker,* 621 F.2d 163, 166 (5th Cir.1980) (citations omitted). *See also United States v. Russo,* 284 F.2d 539, 540 n. 1 (2d Cir.1960). The Government argues that although it did not charge appellant with 18 U.S.C. § 2, such a charge can be inferred. The Second Circuit addresses the failure to indict under 18 U.S.C. § 2 in *United States v. Taylor,* 464 F.2d 240 (2d Cir.1972):

> Although it is preferable that the indictment charge a violation of 18 U.S.C. § 2 if the prosecution intends to proceed on a theory of aiding and abetting, the court may charge the jury on such a theory *when the evidence so warrants,* whether or not 18 U.S.C. § 2 was charged in the indictment.

*Id.,* at 242 n. 1 (Emphasis added).

In this Court's judgment, the evidence at trial would not have warranted presenting the aiding and abetting theory to the jury, had there not been a bench trial. The Government failed to allege, and the proof failed to show, an agreement between appellant and any other party. Furthermore, the Government never argued the aiding and abetting theory before Magistrate Smith. The Court has reviewed numerous importation cases, and was unable to find one case where 18 U.S.C. § 2 was not charged along with 8 U.S.C. § 1324, when the Government sought to attach liability on that theory. *United States v. Gonzalez–Sandoval,* 894 F.2d 1043, 1045 (9th Cir. 1990); *United States v. Cuellar–Flores,* 891 F.2d 92, 92 (5th Cir.1989); *United States v. Esparza,* 882 F.2d 143, 145 (5th Cir.1989); *United States v. Morales–Quinones,* 812 F.2d 604, 606 (10th Cir.1987); *United States v. Ramirez–Rizo,* 809 F.2d 1069, 1070 (5th Cir.1987); *United States v. Loya,* 807 F.2d 1483, 1485 (9th Cir.1987); *United States v. Rosales–Lopez,* 617 F.2d 1349, 1352 (9th Cir.1980), *aff'd,* 451 U.S. 182, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981); *Wishart,* 582 F.2d at 238 n. 2; *United States v. Driscoll,* 449 F.2d 894, 895 (1st Cir.1971), *cert. denied,* 405 U.S. 920, 92 S.Ct. 948, 30 L.Ed.2d 790 (1972).[7]

It is clear to this Court that the Government erred in charging appellant with the wrong crime. However, as appellant's counsel correctly points out: "Under our system of criminal justice, even a thief is entitled to complain that he has been unconstitutionally convicted and imprisoned as a burglar." *Jackson v. Virginia,* 443 U.S. 307, 323–4, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560, *reh'g denied,* 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979). The Court concludes that appellant has met his heavy burden of showing that there were insufficient facts before the Magistrate to sustain a conviction under 8 U.S.C. § 1324(a)(2)(A). It is hereby

---

**7.** The Government cites *United States v. Merkt,* 794 F.2d 950 (5th Cir.1986), in support of its argument that the conviction for importation can stand, despite proof only of transportation. The Court has reviewed the *Merkt* decision, and finds no discussion on that exact issue. The *Merkt* indictment featured two counts of conspiracy along with substantive counts of importation and transportation. No conspiracy was alleged or proven in the case at bar. It also appears as though defendant did not appeal his conviction on the importation counts, as the Fifth Circuit did not discuss the merits of that conviction. The Court does not find *Merkt* to be of aid to the Government's argument. At any rate, the decision of the Fifth Circuit is merely persuasive authority which this Court is free to reject.

ORDERED, that appellant's conviction of February 9, 1990, is reversed; and it is further

ORDERED, that the case is remanded to Magistrate Smith with directions to direct a judgment of acquittal and order the repayment of the fine imposed upon appellant.