**UNITED STATES of America,**

v.

**Mohammed Hussein ASSADI, Defendant.**

**No. CRIM.A. 02–0030.**

United States District Court, District of Columbia.

Oct. 9, 2002.

---

Laura A. Ingersoll, Assistant U.S. Attorney, Transnational and Major Crimes Section, Washington, DC, Counsel for United States.

David W. Bos, Assistant Federal Public Defender, Washington, DC, Counsel for Defendant.

### MEMORANDUM ORDER

ROBERTSON, District Judge.

Defendant Mohammed Hussein Assadi moves pursuant to Fed.R.Crim.P. 29(c) for judgment of acquittal as to Counts Twelve, Fourteen, Sixteen, Seventeen, Eighteen, and Nineteen, charging him under 8 U.S.C. §§ 1324(a)(2) and (a)(2)(B)(ii) with bringing or attempting to bring aliens to the United States illegally and for financial gain. The motion is **granted.**

The dismissed counts are six of nineteen counts set forth in a superseding indictment that charged Assadi with ten counts of encouraging or inducing aliens to enter the United States illegally, one count of conspiracy to encourage or induce, and eight counts, including the six that are the subject of this motion [1], of bringing or attempting to bring aliens to the United States illegally. I stated my intent to dismiss the "bringing to" counts at the close of the government's case, but I was persuaded by the government to submit them first to the jury and then to act under Rule 29(c) so that the question presented—apparently one of first impression—could be preserved for appeal.

The evidence of Assadi's alien smuggling activity varied from alien to alien in its details but adhered to a uniform, and rather simple, pattern: After negotiating the price for his services, Assadi created or procured falsified passports for the aliens, bought them airline tickets to Miami (from Ecuador, Colombia, or Venezuela), procured boarding passes for them, and took them to the airport. He instructed them to destroy their travel documents once they were airborne, to ask for asylum when they deplaned in Miami, and to lie if asked who had arranged their passage. Assadi did not accompany any of the aliens on their flights to Miami, nor did he meet them (or arrange to have them met) when they arrived. His involvement with the aliens ended as soon as he saw them to their flights.

The "encouraging or inducing" charges against Assadi were brought under §§ 1324(a)(1)(A)(iv) and (a)(1)(B)(i), punishing any person who "encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law" and does so "for the purpose of ... private financial gain." The "bringing to" charges were brought under Sections 1324(a)(2) and (a)(2)(B)(ii), punishing any person who:

> knowing or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States, brings to or attempts to bring to the United States in any manner whatsoever, such alien, regardless of any official action which may later be taken with respect to such alien

and does so "for the purpose of ... private financial gain." The same six aliens— Khalid al Khafaji, Ali Hassan Jessam, and the four-person family of Yaser Sitto— were the subjects (one hesitates to say victims) of the guilty verdicts on both the

---

**1.** The jury found Assadi not guilty on Counts Thirteen and Fifteen.

"encouraging or inducing" counts [2] and the "bringing to" counts.

Assadi's acts, alone and in partnership with co-conspirators, certainly amounted to "encouraging" the aliens to enter the United States illegally. Assadi did not, however, "bring" the aliens to the United States.

Just as the word "carry" in criminal statutes is to be understood by its ordinary meaning, *Muscarello v. United States*, 524 U.S. 125, 128–32, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998), the word "bring" must be given its ordinary meaning. "Bring" means "to convey, lead, carry or cause to come along from one place to another ... to escort, [or] accompany." Webster's Third International Dictionary 278 (1976). It does not mean "send" or "launch" (a term the government used during oral argument). The first definition listed in the Oxford English Dictionary is:

> To cause to come along with oneself; to fetch. It includes 'lead' or 'conduct' ... as well as 'carry' ...; it implies motion towards the place where the speaker or auditor is, or is supposed to be, being in a sense the causal of come; motion in the opposite direction is expressed by take .... a. by carrying or bearing in one's hand, etc.

(Emphasis added.) The government has suggested that Congress had itself in mind, or perhaps the United States, as "speaker or auditor," so that, at least under the OED definition, Assadi could properly be said to have brought the aliens here (perhaps in the sense of "brought to you by Coca–Cola"). Fowler provides some support for this argument, noting that "bring" is:

> partially distinguished from *take* according to movement towards the speaker (*bring*), or away from or accompanying the speaker (*take*): *take your raincoat with you and bring me a newspaper from the corner shop.* There are many circumstances, however, in which this simple distinction does not apply: e.g. *if we are going to the zoo shall we bring/ take the camera?*

Fowler's Modern English Usage (3d ed.) 117. Nothing in Fowler, however, or in Webster or the OED, or in correct common usage, supports the use of "bring" when there is neither movement towards the speaker nor accompaniment. Both Webster and the OED recognize "carry" as synonymous with "bring," and "carry," as defined by the Supreme Court, includes accompaniment. *Muscarello*, 524 U.S. at 128, 118 S.Ct. 1911.

The cases applying § 1324 support the conclusion that "encouraging or inducing" is the correct charge to bring against those who help others travel to or enter the United States illegally, while "bringing to" correctly charges persons who not only help, but also accompany aliens, or lead them, or meet them at the border. A very recent Ninth Circuit decision, *United States v. Yoshida*, 303 F.3d 1145 (9th Cir. 2002), holds that "bringing to" does not require control of the means of transport, but that holding does not dispense with the escorting or accompanying component. All the other decisions affirming convictions for "bringing to" involve defendants who came to the United States with the aliens. *United States v. Aguilar*, 883 F.2d 662, 684 (9th Cir.1989) (defendant gave false papers to alien, coached her to lie to immigration officials, and escorted her), superseded by statute on other grounds; *United States v. Bunker*, 532 F.2d 1262, 1263–64 (9th Cir.1976) (defendant drove aliens through immigration checkpoint and coached them); *United States v. Washington*, 471 F.2d 402, 405 (5th Cir.1973) (defendant purchased airline tickets for

2. Counts Two, Five, Eight, Nine, Ten, and Eleven.

aliens, supplied fraudulent identification papers, and traveled with them by plane).[3]

The government, while not conceding that "bringing to" requires either movement toward the speaker or accompaniment, suggests that the accompaniment element was satisfied in this case by evidence that Assadi escorted the aliens to the airports and perhaps even to the departure gates for their flights to Miami. The argument stretches the language of á criminal statute too far. The government does not argue or show that airline gate attendants who check passports at foreign embarkation points are the equivalent of U.S. immigration officers, or that airplanes bound for the United States have attributes of American sovereignty. The act of accompanying an alien right up to but not across the American border may indeed be "bringing to" America, but an alien left at an airport lounge in Cali, Colombia, or Guayaquil, Equador, still has a long way to go.[4]

The government argues that limiting the reach of the statute to the ordinary meaning of "bring" would tie the hands of law enforcement in dealing with alien smuggling schemes, like this one, that are entirely extraterritorial. Obviously, the government has not been hampered in prosecuting the defendant's scheme under the "encouraging or inducing" prong of the statute, and so its real point must be that this Court's construction of "bringing to" would deprive it of the deterrent effect of the three-year mandatory minimum sentence available for "bringing to" convictions (for financial gain) under § 1324(a)(2)(B). The prosecution should

address that argument to Congress, which has made many adjustments to § 1324 in the past, to deal with new forms of alien smuggling. *See United States v. Sanchez–Vargas*, 878 F.2d 1163, 1168–71 (9th Cir. 1989).

---

**3.** In two cases, defendants who did accompany aliens were nonetheless apparently charged only with "encouraging or inducing." *United States v. He*, 245 F.3d 954, 956 (7th Cir.2001), cert. denied, — U.S. —, 122 S.Ct. 377, 151 L.Ed.2d 288 (2001); *United States v. Beliard*, 618 F.2d 886, 887 (1st Cir.1980).

**4.** Assadi put one of his clients on a flight originating in Ecuador, only to have him returned from Venezuela, where it was discovered that his passport was fraudulent. Tr. at 549–50.