UNITED STATES of America, Appellee,

v.

Angelo SEIJO, Appellant.

No. 676, Docket 75–1377.

United States Court of Appeals, Second Circuit.

Argued Jan. 26, 1976.

Decided June 24, 1976.

Michael Young, The Legal Aid Society Federal Defender Services Unit, New York City (William J. Gallagher, New York City, of counsel), for appellant.

Thomas M. Fortuin, Asst. U.S. Atty., Southern District of New York, New York City (Thomas J. Cahill, U.S. Atty., Lawrence B. Pedowitz, Asst. U.S. Atty., New York City, of counsel), for appellee.

Before MOORE, OAKES and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

Angelo Seijo appeals from a judgment of conviction of violation of the federal narcotics laws entered on October 24, 1975 in the United States District Court for the Southern District of New York after a four day jury trial before Charles L. Brieant, Jr., *Judge.* Seijo was sentenced to concurrent fifteen-year terms of imprisonment for each of the two counts on which he was convicted, to be followed by a special parole term of three years.

This is the second time that this Court must rule on the validity of a district court

trial involving this appellant. On April 23, 1975, Seijo and a co-defendant, Nicholas Hildebrandt, were granted a new trial because another co-defendant, Leonard Torres, who testified as a government witness, had, unbeknownst to the government, falsely denied any prior criminal convictions when in fact he had previously been convicted of possession of marijuana. Having fully described the drug transactions involved in this case in our prior decision, *United States v. Seijo,* 514 F.2d 1357 (2 Cir. 1975), we now will develop only those facts and issues relevant to disposition of this second appeal.

Appellant was initially tried on four of the six counts contained in indictment 74 Cr. 606, filed on June 14, 1974.[1] Count One charged Seijo and co-defendants Hildebrandt, Torres, and DiDomenico with conspiracy to violate the federal narcotics laws from April 1, 1974 to June 14, 1974, in violation of 21 U.S.C. § 846. Count Four charged all four defendants with distributing approximately 260 grams of heroin on June 5, 1974. Count Five charged only Seijo with possessing, with intent to distribute, approximately 34 grams of heroin on June 5, 1974.[2] Counts Four and Five charged violations of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2. Finally, Count Six charged Seijo with carrying a firearm during commission of the felonies specified in the other three counts, in violation of 18 U.S.C. § 924(c)(2); this last count was severed by Judge Mac-Mahon prior to trial and subsequently was dismissed with the government's consent. On the first day of trial, co-defendant Torres pleaded guilty to Count One and later testified as a government witness. After a two day trial, the jury found Seijo guilty on Counts One and Four and not

guilty on Count Five. Co-defendant Hildebrandt was found guilty on all counts in which he was named; DiDomenico was found guilty on Counts One and Two. Judge MacMahon sentenced Seijo to concurrent terms of fifteen years' imprisonment on each of the two convictions, to be followed by a three year special parole term.

As described, *supra,* the convictions of Seijo and Hildebrandt were reversed on appeal and a new trial granted. On the day upon which retrial before Judge Brieant began, Hildebrandt pleaded guilty to Counts Three and Four, and Seijo proceeded to trial alone. The jury again convicted him on Counts One and Four.

On appeal Seijo argues that the government was collaterally estopped from offering proof in the second trial that he possessed heroin because his acquittal on Count Five in the first trial could only have been based on a finding of reasonable doubt that he had ever possessed the drugs; Seijo further argues that collateral estoppel also bars the evidence because the possession of heroin was a lesser included offense of the crime of possession with intent to distribute, the offense charged in Count Five. Additionally, Seijo asserts that the district court abused its sentencing discretion and violated due process guarantees because of the absence of substantive standards for the imposition of sentence. For the reasons set forth below, we affirm the judgment of conviction.

## I. *The Collateral Estoppel Claims.*

It is now well settled that collateral estoppel, an ingredient of the Fifth Amendment guarantee against being placed in jeopardy twice for the same offense, applies to criminal prosecutions and precludes prosecution when an issue of ulti-

---

1. Count Two charged Hildebrandt, Torres and James DiDomenico with distributing 38 grams of heroin on April 11, 1974. Count Three charged Hildebrandt and Torres with distributing 162 grams of heroin on April 18, 1974.

2. Evidently the indictment was incorrect in its representation of the weight of the heroin involved in each count. The testimony of the government's chemist as to the net weight of

the heroin was stipulated to at both trials as follows:

| Count 2 | 13.8 grams |
|---|---|
| Count 3 | 122.0 grams |
| Count 4 | 217.4 grams |
| Count 5 | 7.6 grams |

The corrected amounts will be referred to in the text of the opinion.

mate fact has been determined in a defendant's favor by a valid and final judgment in a prior proceeding between the same parties. *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *Turner v. Arkansas,* 407 U.S. 366, 92 S.Ct. 2096, 32 L.Ed.2d 798 (1972). The defendant has the burden of establishing that the issue he seeks to foreclose from the second litigation was "necessarily" resolved in his favor by the first verdict. *United States v. Cala,* 521 F.2d 605, 608 (2 Cir. 1975); *United States v. Gugliaro,* 501 F.2d 68 (2 Cir. 1974); *United States v. Tramunti,* 500 F.2d 1334 (2 Cir.), cert. denied, 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974). We have previously noted that this burden of proof is a heavy one, since "it usually cannot be determined with any certainty upon what basis the previous jury reached its general verdict." *United States v. Gugliaro, supra,* 501 F.2d at 70. *See also United States v. Cala, supra,* 521 F.2d at 609; *United States v. Cioffi,* 487 F.2d 492, 498 (2 Cir. 1973), cert. denied sub. nom., *Ciuzio v. United States,* 416 U.S. 995, 94 S.Ct. 2410, 40 L.Ed.2d 774 (1974).

■ The Court's task in evaluating a claim of issue preclusion has been ably summarized by Judge Mansfield in *United States v. Cala, supra,* 521 F.2d at 608:

> In determining what issues were necessarily resolved by the prior proceedings, the court is to take a practical approach, examining the record, pleadings, evidence and jury instructions in order to decide "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe v. Swenson, supra,* 397 U.S. at 444, 90 S.Ct. at 1194; *Sealfon v. United States,* 332 U.S. 575, 579, 68 S.Ct. 237, 92 L.Ed. 180 (1948); *United States v. Tramunti, supra,* 500 F.2d at 1346. If the jury could have done so in the prior case, the claim of collateral estoppel must fail, since the defendant can prevail only if the issue which he seeks to preclude from consideration was "necessarily" resolved in his favor in the prior proceeding.

It remains for us to apply these principles to the instant case.

■ Count Five charged Seijo with possession with intent to distribute 7.6 grams of heroin found beneath the backseat of the police car into which he had been placed by the arresting officer shortly after his arrest. Seijo claims that the record of the first trial establishes that the jury's acquittal on this count could only have been based on a finding of reasonable doubt that he had possessed the heroin in question. In support of his argument he cites his own testimony, unchallenged by the government, that he himself never used heroin and never possessed the heroin in question, and testimony by a former police officer that any heroin on Seijo's person would have been discovered during normal pat-down procedures. Seijo claims that no evidence was introduced by either side to resolve the "intent to distribute" issue, *i. e.,* the amount of drugs that would constitute a user's supply as opposed to a seller's supply. He argues that since the jury heard no evidence from which it could find that Seijo possessed drugs for his own use, the verdict of acquittal necessarily meant that the jury found there was a reasonable doubt that he had ever possessed the drugs. We disagree.

At the first trial, the arresting officer testified that after Seijo had been arrested, he was frisked for weapons only and then placed in the backseat of the car, later to be joined by Torres. When the officer saw appellant moving his handcuffed hands up and down behind his back, they removed both men from the car. A search revealed the packet of heroin directly under that part of the seat upon which Seijo had been seated. Additionally, Torres testified that he had seen Seijo place a similar package in his pants as they were leaving Hildebrandt's shop earlier that evening. Although a retired police officer appearing for the defense testified that he routinely asked arrested persons to empty their pockets and that he believed normal frisk procedures would have revealed the packet of heroin if it had been on Seijo's person, on cross-examination the government showed

that the witness had never participated in a narcotics case or a mass arrest. Whether or not Seijo possessed the drugs discovered in the car was certainly one question for the jury to resolve.

Another question, however, was whether Seijo possessed drugs with the intent to distribute them. There was evidence, admittedly scanty, at the first trial from which the jury could have determined the worth of particular amounts of heroin and thus concluded that certain amounts would tend to be associated with only a user rather than a distributor. When co-defendant DiDomenico was arrested, he had in his possession a small packet containing 2.1 grams of a white powder containing heroin similar in composition to the other heroin involved in this case, including that found under Seijo's seat.[3] DiDomenico was not charged with possession or possession with intent to distribute this small amount, the evidence of possession having been offered solely to link DiDomenico with the conspiracy. DiDomenico's counsel, in cross-examining the police officer who had seized the packet, established that the value of the 2.1 grams was only $20–$25. From this testimony, it is clear that the jury could have determined that the amount of heroin found under Seijo's seat, 7.6 grams, was worth only about $70–$90 and could have concluded that an amount having such a small value was not sufficient to warrant the inference that it was possessed with a view toward distribution. Finally, we note that Judge MacMahon's charge to the jury instructed that to convict, the jury must find possession accompanied by an intent to distribute.

We again emphasize that appellant bears the weighty burden of establishing that the prior verdict *necessarily* determined in his favor the issue of possession sought to be foreclosed at the second trial. The offense of which Seijo was acquitted contained two elements, possession and intent to distribute, both of which had to be established by the prosecution beyond a reasonable doubt. Contrary to Seijo's assertions, there was evidence during the first trial that could support the jury's concluding that Seijo possessed heroin but lacked any intent to distribute such a small quantity with a correspondingly small resale value. Thus, it cannot be said "with certainty," *United States v. Cioffi, supra,* 487 F.2d at 498, that the jury in the first trial necessarily decided the possession issue in Seijo's favor. Since the jury's verdict could have been grounded on an issue other than that which the appellant sought to foreclose, the government was not estopped from offering proof of Seijo's possession at the second trial to connect him with the conspiracy.

Seijo also contends that the fact that possession of heroin is a lesser included offense[4] of possession with intent to distribute estopped the government from offering proof of possession at his retrial. The government acknowledges that double jeopardy principles bar the prosecution of a lesser included offense that could have been tried together with a greater offense after an acquittal on the latter. Here, however, Seijo was not retried for possession at the second proceeding. Rather, proof of possession was offered as evidence of his connection to the conspiracy charged in Count One. The district court admitted the evidence with a limiting instruction to the jury and reiterated this limitation in its jury charge. Furthermore, in the first trial, defense counsel failed to request that the court give a lesser included offense charge to the jury.[5] In *United States v. Harary,*

3. The chemist's report admitted into evidence indicated that the particular dilutant used in the heroin tested was relatively rare, occurring in only 7% of the specimens generally tested.

4. In *United States v. Harary,* 457 F.2d 471, 474 n. 6 (2 Cir. 1972), a lesser included offense was defined as "one which is established by proof of all or less than all of the facts required to

establish the greater offense. In short, it is of a kind in which one cannot commit the greater offense without committing the lesser offense."

5. The Supreme Court held, in *Sansone v. United States,* 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965), that a lesser included offense instruction is proper where the charged greater offense requires the jury to find a dis-

457 F.2d 471 (2 Cir. 1972), this Court considered a case in which the district court denied the defendant's repeated requests to withhold a lesser included offense charged from the jury. We there held that the denial was error when such a request was made and when the jury, on the evidence presented, rationally could not have returned a verdict of not guilty of the greater offense and guilty of the lesser offense. Neither proposition is true in the case at bar. At no time did either side request a lesser included offense charge. Moreover, as discussed earlier, the jury, on the evidence presented, *could* have found Seijo not guilty of possession with intent to distribute but guilty of possession. The absence of a lesser included offense charge in the first trial results in a nonconclusive determination about the meaning of the verdict of acquittal on the greater offense. The first jury's acquittal on the greater offense thus being inconclusive with respect to the lesser offense, the government was not collaterally estopped from offering the possession evidence as part of its conspiracy case.[6]

## II. *Sentencing Claims.*

■ Seijo raises two claims of error concerning his sentence. First he contends that Judge Brieant was required to find beyond a reasonable doubt that Seijo was the "man behind the scenes" in the narcotics conspiracy before he could rely on Torres' testimony to that effect in sentencing him. He also argues that the absence of any substantive standards for the imposition of sentence violates due process guarantees, concluding that this Circuit should adopt a "least restrictive alternative" standard for determining an appropriate sentence.

Some factual background is necessary to understand Seijo's first argument. After Seijo's conviction on these same two counts at the first trial, Judge MacMahon sentenced him to concurrent fifteen year terms of imprisonment, the maximum sentence on each count. Judge MacMahon commented that he believed Seijo was the "man behind the scenes" who ran the narcotics operation. At sentencing following the second trial, Judge Brieant sentenced Seijo to the same term as that imposed by Judge MacMahon. On appeal Seijo contends that Judge Brieant expressly adopted Judge MacMahon's sentencing justifications, including his judgment about Seijo's supervisory role in the conspiracy.

The record supports a contrary conclusion. Judge Brieant clearly stated that he looked at the sentencing issue *de novo*. He expressly agreed only with Judge MacMahon's assessment that the conspiracy dealt with large quantities of heroin, and that this type of drug operation had a harmful effect on New York City. He noted that Seijo exhibited no contrition and that no substantial change in circumstances had occurred since the prior sentencing. He further stated that as a witness, Torres had impressed him as "better than the average informer cooperator." There was no reference made to Judge MacMahon's evaluation of Seijo's role in the conspiracy.

■ Even if Judge Brieant had made such a finding, however, there would have been no error in sentencing. A statement of reasons justifying the trial judge's sentence is salutary but not mandatory. *United States v. Velazquez,* 482 F.2d 139 (2 Cir. 1973). The district court in the instant case provided such reasons and we find they included no improper criteria or materially incorrect information. *United States v. Hendrix,* 505 F.2d 1233 (2 Cir. 1974), *cert. denied,* 423 U.S. 897, 96 S.Ct. 199, 46

---

puted factual element which is not required for conviction of the lesser included offense. If the defense counsel does not request such a charge, however, its omission is not error. *See United States v. Whitaker,* 144 U.S.App.D.C. 344, 447 F.2d 314 (1971); *see also Walker v. United States,* 135 U.S.App.D.C. 280, 418 F.2d 1116, 1119 (1969) (dictum).

**6.** The government also asserts that the doctrine of collateral estoppel has no applicability to retrials of multicount indictments. Since we have found that collateral estoppel does not bar the presentation of evidence contested in this case, we need not decide this broader issue.

L.Ed.2d 130 (1975), does not support Seijo's position. In that case, the sentencing judge explicitly added two years to the defendant's sentence because of his "outrageous" perjury as a witness, of which the judge was convinced beyond a reasonable doubt. This Court found that this conclusion was within the trial court's sentencing discretion and held that "perjury should not be treated as an adverse sentencing factor unless the judge is persuaded beyond a reasonable doubt that the defendant committed it." 505 F.2d at 1236. Seijo contends that *Hendrix* required Judge Brieant to find beyond a reasonable doubt that he was the key man in the conspiracy before considering testimony to that effect as a sentencing factor; otherwise, he claims, he will have been sentenced for a crime more serious than the one of which he was actually convicted.

██ In *Hendrix,* the defendant argued that increasing his sentence for perjury amounted to conviction for another crime without the safeguards of indictment and trial. The Court rejected that argument, noting that it "ignores the nature of the sentencing process as it exists in our system and of the factors the trial judge may consider in exercising a frequently enormous range of discretion. If there is no clear consensus on these factors, it is certainly clear that they include, as aggravating circumstances, conduct that . . . has not been duly adjudged criminal in the case in which the sentence is being imposed." 505 F.2d at 1235. Torres' testimony that Seijo had a major role in the drug operation can be considered an aggravating circumstance.[7] *United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). Furthermore, the *Hendrix* holding resulted from the danger we perceived that a defendant would be fearful of testi-

fying because the judge's disbelief would automatically result in an increased sentence. In short, *Hendrix* addressed the unique considerations relating to perjury as a sentencing factor which simply are not present in the instant case. We thus decline Seijo's invitation to expand its applicability to include the case at hand.

██ Seijo's second argument, when reduced to its basics, asks this Court to review the sentence imposed because it is excessive. He urges that we adopt a criterion that the penalty be the least restrictive alternative consistent with the goals of punishment. The Supreme Court has recently reaffirmed the "general proposition that once it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Dorszynski v. United States,* 418 U.S. 424, 431, 94 S.Ct. 3042, 3047, 41 L.Ed.2d 855 (1974). Appellant does not claim that there has been any reliance on materially incorrect information. Nor have we found that the sentencing judge relied on improper considerations. The sentence imposed herein is within the statutory limits and therefore not reviewable. *United States v. Velazquez, supra.*

Affirmed.

██

---

7. For example, the sentencing judge may consider crimes on which there has been no conviction, *United States v. Cifarelli,* 401 F.2d 512, 514 (2 Cir.), *cert. denied,* 393 U.S. 987, 89 S.Ct. 465, 21 L.Ed.2d 448 (1968); evidence of counts on which a defendant had been acquitted, *United States v. Sweig,* 454 F.2d 181, 184 (2 Cir. 1972); counts of an indictment dismissed by the government, *United States v. Needles,* 472 F.2d 652, 655 (2 Cir. 1973); hearsay evidence, *United States v. Rosner,* 485 F.2d 1213 (2 Cir. 1973), *cert. denied,* 417 U.S. 950, 94 S.Ct. 3080, 41 L.Ed.2d 672 (1974); and evidence obtained in violation of the Fourth Amendment, *United States v. Schipani,* 435 F.2d 26 (2 Cir. 1970), *cert. denied,* 401 U.S. 983, 91 S.Ct. 1198, 28 L.Ed.2d 334 (1971).