UNITED STATES of America, Appellee,

v.

Patrice MESPOULEDE, a/k/a "Patrice Fabre", Defendant-Appellant.

No. 764, Docket 78–1428.

United States Court of Appeals,
Second Circuit.

Argued March 14, 1979.

Decided April 10, 1979.

David J. Gottlieb, The Legal Aid Soc., Federal Defender Services Unit, New York City, for defendant-appellant.

Mary Jo White, Asst. U. S. Atty., S. D. New York, New York City (Robert B. Fiske, Jr., U. S. Atty., S. D. New York, Richard D. Weinberg, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before KAUFMAN, Chief Judge, and MULLIGAN and GURFEIN, Circuit Judges.

IRVING R. KAUFMAN, Chief Judge:

This case concerns the applicability of the doctrine of collateral estoppel to the retrial of one count of a multicount indictment. So stated, the issue presented for resolution sounds rather technical in nature, and even dry as dust. But the underlying principles that animate our decision in this case are far from abstruse. We believe that once a defendant has satisfied one jury that he is not guilty of a crime, constitutionally-rooted considerations of fairness preclude the Government from injecting any issues necessarily decided in his favor into a second trial for another offense.

## I.

The constitutional question raised by this appeal cannot be decided in the abstract. Rather, the proper resolution of the case depends on a detailed examination of the transcripts of two trials, and we will therefore begin by discussing the charges and evidence before each jury.

Patrice Mespoulede was charged in a two-count indictment with conspiracy to distribute cocaine, 21 U.S.C. § 846, and with possessing, on January 31, 1978, approximately 1.2 kilograms of the drug with an intent to distribute it. 21 U.S.C. §§ 812, 841(a)(1), (b)(1)(A). Leslie Duverglas and Giorgio Penco were named as unindicted co-conspirators.

At the initial trial before Judge Motley, Dennis Solovay, a friend of Mespoulede's, testified that on several occasions during 1977 the appellant had purchased small quantities of cocaine from him at Studio 54, a Manhattan discotheque. It was there that Mespoulede introduced Solovay to Leslie Duverglas. In December 1977, Solovay

learned from Duverglas that he and Mespoulede were sharing a luxury apartment on Central Park South and had become "partners" in the cocaine business.

On January 25, 1978, Solovay was arrested on an unrelated cocaine charge and agreed to cooperate with agents of the Drug Enforcement Administration. Three days later, Solovay met Duverglas at Studio 54 and arranged to purchase a substantial quantity of cocaine. Because Solovay did not want his activities as an informant to imperil his friend, he invented an excuse to keep Mespoulede out of the pending transaction, and Duverglas acceded.

Solovay alerted the DEA, and on January 31 he made a series of visits to Duverglas at his apartment. On his third trip, Solovay saw a large quantity of cocaine on the dining room table. He then informed Duverglas that he would return shortly with the purchase price, and he left the apartment to report to the waiting DEA agents.

Two hours later, the agents entered the apartment, arrested Duverglas, and inquired if anyone else was present. Directed to the bedroom, they found Mespoulede asleep on the bed. The cocaine was on a dresser, along with a triple-beam balance scale and implements for cutting cocaine. When Mespoulede was frisked, the agents also discovered a small glass vial of cocaine.[1] Mespoulede was not immediately arrested, however, a fact over which he later expressed no little surprise.[2]

In prosecuting Mespoulede for the possession of the kilogram of cocaine on January 31, then, the Government had to overcome the effect of testimony by its own witness that Duverglas had agreed to insulate Mespoulede from the transaction. Solovay also averred that on his three visits to 210 Central Park South, he had seen no one but Duverglas in the apartment. He conceded, however, that the bedroom doors were always closed, and the prosecution attempted to prove that Mespoulede was behind one of those doors.

Amy Bonk, Duverglas's common law wife, testified under a grant of immunity that Mespoulede had indeed moved into the apartment in December 1977 and had become a partner in Duverglas's flourishing trade in cocaine, with Giorgio Penco serving as supplier. Although Mespoulede elected to remain in the background for the January 31 transaction, Bonk claimed that he agreed to participate in return for half the profit. As the "silent partner," she testified, his self-appointed task was to prepare the cocaine for sale. Between 7:30 and 8:00 P.M. on January 31, soon after Penco had delivered the drugs, Mespoulede sat at a desk in the bedroom with a scale, white powder, two bottles of inositol (a food additive used to cut cocaine), "and some spoons and strainers and things." Bonk also recalled that Mespoulede had complained that he had too little time to dilute all the cocaine to the proper ratio before Solovay arrived. Later, he packaged the cocaine in plastic and placed it in a large bag.

1. Mespoulede argues at length that the physical evidence seized from the Duverglas apartment should have been suppressed. Relying on our recent decision in *United States v. Reed,* 572 F.2d 412 (2d Cir.), *cert. denied,* —— U.S. ——, 99 S.Ct. 283, 58 L.Ed.2d 259 (1978), he argues that the warrantless entry into the apartment was unlawful. But this is, so to speak, too thin a reed on which to rest an argument for suppression. In *United States v. Corcione,* 592 F.2d 111 at 117 (2d Cir. 1979), we ruled that *Reed* would not be applied to searches and seizures that occurred before the date of that decision, since no deterrence would be achieved through retroactive application. Since the entry in question here predated *Reed,* and no other basis for suppression is asserted, we believe the evidence was properly admitted.

With respect to Mespoulede's allegation that the small vial of cocaine found on his person in the course of a search for weapons should have been suppressed, suffice to say that we agree with Judge Motley that the body search was done for protective purposes and hence was valid under *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *See United States v. Oates,* 560 F.2d 45 (2d Cir. 1977).

2. Giorgio Penco, who delivered the cocaine on January 31, had been arrested when he left the apartment, shortly after Solovay's departure. Six weeks later, Duverglas and Penco were convicted of conspiracy to violate the narcotics laws and possession of the kilo with an intent to distribute it.

When Solovay arrived at the apartment to examine the cocaine, Bonk, Mespoulede, and Penco retired to a bedroom behind a closed door. After Solovay departed, Mespoulede expressed annoyance that he had failed to bring the money with him.[3] In addition, Agents Maddox and Tuerack testified that when they arrested Mespoulede in April he confessed that he had cut and packaged the cocaine. Appellant did not call any witnesses, but in cross-examination and summation he launched a powerful attack on Bonk's credibility, eliciting and emphasizing an admission that she had perjured herself at Duverglas's trial. Defense counsel stressed the agreement between Solovay and Duverglas to leave Mespoulede out of the deal and insisted that his client was at most a knowing bystander.[4]

The jury evidently found these arguments persuasive, for it acquitted Mespoulede on the possession count. It failed to reach a verdict on the conspiracy count, however, and Judge Motley declared a mistrial on that charge.

Retrial before Judge Knapp commenced on October 10, 1978, and Mespoulede moved to bar the Government from introducing evidence that he had possessed the cocaine involved in the January 31 transaction. He argued that the first jury had necessarily resolved this question in his favor when it acquitted him of possession, and he contended that it would violate the double jeopardy clause to permit relitigation of this issue.

Although Judge Knapp concluded that the jury had indeed decided that Mespoulede did not possess the cocaine beyond a reasonable doubt, he denied the motion to suppress. The judge concluded that a jury could have a reasonable doubt as to possession but still rationally consider evidence of the substantive offense, in combination with other evidence, as probative of participation in the conspiracy.

3. It was at this juncture that Amy Bonk transferred the cocaine from the dining room table to Mespoulede's bedroom.

4. In addition, since Mespoulede's "confession" had not been recorded, his counsel suggested to

The Government's presentation shifted in the new trial, doubtless because Amy Bonk had proved less than a wholly convincing witness. Duverglas himself testified and alleged that he and Mespoulede were involved in as many as 50 cocaine sales between November and January. Duverglas provided the apartment and Mespoulede the requisite expertise. Duverglas also discussed the January 31 transaction, describing in some detail the procedure Mespoulede allegedly used to cut and package the cocaine. The jury learned that Mespoulede "real quickly" mixed the drug with inositol, put it through a strainer, and then through a coffee grinder. In addition, Agent Tuerack again testified that Mespoulede had confessed to mixing cocaine on January 31. Judge Knapp denied a defense request that the jury be told that appellant had been acquitted of possession, and in both her opening statement and summation, the prosecutor made frequent reference to the testimony of Tuerack and Duverglas. Mespoulede was convicted,[5] and this appeal followed. We reverse for the reasons set forth below.

## II.

 We shall first set out some legal principles of the "black letter" variety. It is firmly established that collateral estoppel applies to criminal prosecutions as an element of the double jeopardy clause, *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *United States v. Cala,* 521 F.2d 605, 607 (2d Cir. 1975), and that the Government is precluded from relitigating an issue decided in defendant's favor by a valid final judgment. Justice Black, concurring in *Ashe, supra,* 397 U.S. at 448, 90 S.Ct. at 1196, stated the principle succinctly: "the doctrine of collateral estoppel is a basic and essential part of the Constitution's prohibition against double jeopardy."

the jury that the alleged admissions had little probative value.

5. Judge Knapp sentenced Mespoulede to time served.

*See United States v. Seijo,* 537 F.2d 694, 696–97 (2d Cir. 1976), *cert. denied,* 429 U.S. 1043, 97 S.Ct. 745, 50 L.Ed.2d 756 (1977).[6] Judge Friendly noted in *United States v. Kramer,* 289 F.2d 909, 913 (2d Cir. 1961), that the application of the principle of collateral estoppel has two phases. Initially, we must determine what the first judgment decided. Then we must go on to examine how that determination bears on the second case.

■■ At the outset, then, the defendant must carry the burden of proving that the fact-finder acquitted him because it resolved in his favor the very issue that he seeks to foreclose from consideration in the second trial. *United States v. Gugliaro,* 501 F.2d 68, 70 (2d Cir. 1974); *United States v. Tramunti,* 500 F.2d 1334, 1346 (2d Cir.), *cert. denied,* 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974). Although the ground of acquittal cannot generally be ascertained, *see, e. g., United States v. Seijo, supra,* 537 F.2d at 697, we must not make the defendant's task even more formidable by straining to postulate "hypertechnical and unrealistic" grounds on which the jury could conceivably have rested its conclusions, *United States v. Jacobson,* 547 F.2d 21, 23 (2d Cir. 1976), *cert. denied,* 430 U.S. 946, 97 S.Ct. 1581, 51 L.Ed.2d 793 (1977). On the basis of our study of the pleadings, evidence, and charge in the prior trial, *see Ashe v. Swenson, supra,* 397 U.S. at 444, 90 S.Ct. 1189; *United States v. Cala, supra,* 521 F.2d at 608, we are impelled to the conclusion, as was Judge Knapp, that the jury must have decided that Mespoulede did not possess the cocaine on January 31.

Judge Motley properly instructed the first jury that the Government was required to prove four elements to convict the defendant on Count 2. It had to establish that the substance was cocaine, that Mespoulede possessed it, that he did so knowingly, and that he did so with an intent to distribute it. The parties stipulated that the substance found in the apartment was cocaine, and the question of Mespoulede's knowledge was never in dispute. Indeed, the thrust of the defense argument was that Mespoulede was merely a knowing spectator, uninvolved in the Duverglas-Solovay transaction.

Nor could the verdict of acquittal have been predicated on a finding that Mespoulede possessed the cocaine but did not intend to distribute it. In this respect, the case before us differs from *United States v. Seijo, supra,* where there was some evidence at trial to indicate that the small quantity of narcotics the defendant was charged with possessing could have been retained for personal use rather than distribution. 537 F.2d at 698. The *Seijo* jury could therefore have concluded that he possessed the drugs but did not intend to distribute them. By contrast, Mespoulede was charged with possessing 1.2 kilos of cocaine, in excess of 2½ pounds, and valued at more than $40,000. Obviously, no one would retain such an enormous and valuable quantity of cocaine for personal use alone.[7]

---

**6.** If the issue is essential to conviction in the second trial, prosecution of the offense is prohibited. *United States v. Seijo,* 537 F.2d at 696–97.

**7.** The Government urges several other alternative grounds upon which the jury could have acquitted Mespoulede on Count 2, but none of them is consistent with the instructions given by Judge Motley. For example, assuming, as we are required to do, that the jury complied with the charge, it could not have found that Mespoulede did cut and package the drugs but that cutting and bagging did not constitute possession. Judge Motley stated quite explicitly that "the person who knowingly has direct physical control over a thing at a given time is then in actual possession of it."

Finally, and seemingly in desperation, the Government suggests that the jury may have compromised, and hence what was actually decided can never be known. But this assertion is made in the teeth of clear case law that the possibility that the jury acquitted out of a desire to compromise or to show mercy, or from "simple frustration after hours of tedious debate," *United States v. Flowers,* 255 F.Supp. 485, 487 (E.D.N.C.1966); *see, e. g., Cosgrove v. United States,* 244 F.2d 146, 154 (9th Cir. 1955), is not a basis for refusing to apply collateral estoppel. A contrary rule would, of course, eviscerate the doctrine altogether, for no one who is not present during the jury's deliberations can ever know precisely how the jury reached its verdict. *Harary v. Blumenthal,* 555 F.2d 1113, 1116–17 (2d Cir. 1977), cited to us,

### III.

■ In deciding how the verdict of acquittal bears on the second trial, we are guided not only by precedents bearing on the technical question this case raises, but, in addition, by fundamental considerations of fair play. In our view, it places an unjust burden on a defendant to require him to relitigate the very issue a jury decided in his favor. In effect, introduction of such evidence meant that this defendant was subjected to a second risk of conviction for his actions on January 31.

■ Adopting Judge Knapp's reasoning, the Government vigorously contends that in the second trial for violation of 21 U.S.C. § 846—under which the prosecution need not prove any overt act—the jury could rely on the evidence of possession on January 31, to determine that the defendant was a member of the conspiracy, even if it did not believe the evidence beyond a reasonable doubt. In essence, the Government is contending that collateral estoppel may only be applied where the issue sought to be excluded is a *sine qua non* of conviction in the second trial.

This is simply not the law. The seminal decision in this Circuit is *United States v. Kramer,* 289 F.2d 909 (2d Cir. 1961). Kramer was acquitted on all eight counts of an indictment that charged him with burglarizing a post office and stealing registered mail. The Government then drew up a new indictment charging him with conspiracy to commit the same crimes, and it introduced the evidence of the substantive offenses that had been rejected at the first trial. Having held that the jury had necessarily decided that Kramer was not responsible for the burglaries, we went on to reject the contention that the same evidence could be admitted at the conspiracy trial. Specifically, we ruled that collateral estoppel was applicable even if the issue decided in the first trial was not essential to a conviction

for conspiracy. "A defendant who has satisfied one jury that he had no responsibility for a crime ought not to be forced to convince another of this, even in a prosecution where . . . the Government need not have tendered the issue." *Id.* at 915–16.

The notion that collateral estoppel is not limited to the *Ashe v. Swenson* paradigm, in which the fact sought to be relitigated is essential to conviction and thus must be proved beyond a reasonable doubt, finds support in decisions by at least two other circuits. *See Yawn v. United States,* 244 F.2d 235 (5th Cir. 1957); *United States v. Simon,* 225 F.2d 260 (3d Cir. 1955); *United States v. De Angelo,* 138 F.2d 466 (3d Cir. 1943). In *De Angelo,* the jury need not have believed beyond a reasonable doubt that the defendant possessed an unregistered distillery on December 3, 1953 (the charge on which he was previously acquitted) to convict of conspiracy, since nine other overt acts were alleged in the indictment. Similarly, in *Yawn,* the overt act of which the defendant had been acquitted need not have been proved beyond a reasonable doubt on retrial, since the Government had only to meet that standard with respect to an act committed by a coconspirator. The Government is free, of course, to charge a defendant with new crimes arising out of the same conduct, "but it may not prove the new charge by asserting facts necessarily determined against it on the first trial." *Kramer, supra,* 289 F.2d at 916.

The Fifth Circuit's analysis of the admissibility, as similar acts proof, of evidence of another crime of which the defendant was acquitted, is strikingly similar to our reasoning here. In *Wingate v. Wainwright,* 464 F.2d 209 (5th Cir. 1972), the court ruled that where the defendant was previously acquitted of two robberies, the Government could not reintroduce testimony that he committed those two robberies for the pur-

---

does not stand for a contrary principle. In *Harary,* there was an internally inconsistent verdict, from which the court was led ineluctably to the conclusion that the jury must have compromised. By contrast, the jury in the instant case could rationally have concluded that

there was insufficient evidence to convict for possession on January 31, but that there was enough evidence to convict on the conspiracy count. Accordingly, we are not faced with a case in which the jury had to have behaved irrationally.

pose of establishing intent or a common scheme or plan in a third trial. The court held that it was irrelevant that the relitigated issue was an "evidentiary" fact rather than an "ultimate" fact in the new trial. As in the case before us, the relitigated facts were offered into evidence to prove that the defendant committed a different offense, but failure to prove the prior criminal acts beyond a reasonable doubt would not preclude a conviction. The essential point is that the defendant must defend against charges or factual allegations that he overcame in the earlier trial, *id.* at 213–14, just as if that trial had never taken place.[8] *But see Oliphant v. Koehler,* 594 F.2d 547 (6th Cir. 1979).

We do not rest our decision on the force of precedent alone. To put it bluntly, to refuse to allow the assertion of collateral estoppel in this case would simply be inequitable. This is not a situation in which the second suit is civil in nature, where the defendant faces sanctions or penalties of quite a different order than those he escaped through acquittal on criminal charges. Here, Mespoulede is once again faced with criminal sanctions that, realistically, may be imposed in large part because the second jury is persuaded that he possessed cocaine on January 31.[9]

To be sure, he is now being tried for conspiracy, but the evidence of possession was introduced to persuade the second jury of the same fact already litigated and resolved in Mespoulede's favor—that he was cutting and packaging cocaine on January 31. Although we can never know how much weight the evidence of possession on January 31 carried with the second jury, from the standpoint of the double jeopardy clause the key fact is that Mespoulede was subjected to a second risk of conviction for his actions on January 31. No less than in the first trial, Mespoulede had to confront an assertion that he possessed cocaine on that date.[10]

■ As the specific issue subject to relitigation looms larger in the Government's case, it becomes more likely that the matter will prove decisive in the jury's deliberations. On the other hand, if, as the Government contends, the evidence of possession "was only some evidence of one among many instances of the defendant's actual possession of cocaine," then we are at a loss to see how barring the evidence of one particular transaction will harm the prosecution. With respect to the conspiracy count, as to which a mistrial was declared, the Government was free to introduce new evidence of various illicit deals and to persuade the jury that it should infer the existence of a conspiracy from these transactions. But where one jury has "necessarily

---

**8.** Our decision in *United States v. Feinberg,* 383 F.2d 60, 71 (2d Cir. 1967), *cert. denied,* 389 U.S. 1044, 88 S.Ct. 788, 19 L.Ed.2d 836 (1968) is not to the contrary. In that case collateral estoppel was inapplicable because the defendant had failed to demonstrate that the issue he had sought to exclude had been "necessarily determined" in his favor in the first trial.

**9.** We think that if a prior conviction cannot be used for the limited purpose of impeaching a defendant who lacked counsel in his earlier trial, *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972), it would be quite anomalous to permit the Government to argue guilt by proving to the jury that the defendant committed a crime of which he had already been acquitted. An acquittal in a criminal case would no longer serve to clear a man's name; rather, a permanent stigma would remain, a pall cast over his reputation. *Accord, Wingate v. Wainwright,* 464 F.2d 209, 215 & n. 7 (5th Cir. 1972).

**10.** The Government makes the rather curious suggestion that inasmuch as Mespoulede would have to stand trial on the conspiracy count even if the evidence of possession were excluded, double jeopardy policy does not forbid the court to accept the evidence. After all, Mespoulede must "run the gantlet" again in either event. The double jeopardy clause, of course, does not bar retrial for conspiracy following the acquittal of the underlying substantive offense. *See, e. g., United States v. Cumberbatch,* 563 F.2d 49, 51 (2d Cir. 1977), *cert. denied,* 436 U.S. 946, 98 S.Ct. 2850, 56 L.Ed.2d 788 (1978). This does not mean, however, that Mespoulede's interest in avoiding the strain and expense of relitigating the possession question, against an adversary with incomparably greater resources, is in the least attenuated. *See United States ex rel. DiGiangiemo v. Regan,* 528 F.2d 1262, 1265–66 (2d Cir. 1975) (due process), *cert. denied,* 426 U.S. 950, 96 S.Ct. 3172, 49 L.Ed.2d 1187 (1976).

determined" that the defendant was innocent of participation in one deal, that transaction is out of bounds on retrial.[11]

## IV.

Finally, it is argued that the principles of collateral estoppel are inapplicable to the retrial of charges contained in a multicount indictment. We must therefore resolve the question left open in *United States v. Seijo, supra,* 537 F.2d at 699 n. 6.

At first blush, it may seem odd that such a broad rule is pressed upon us, especially since the burden of litigating an issue that the defendant thought had been laid to rest for all time is no lighter than in the first trial. And indeed, with virtual unanimity, the cases have applied collateral estoppel to bar the Government from relitigating a question of fact that was determined in defendant's favor by a partial verdict. *See Green v. United States,* 138 U.S.App.D.C. 184, 426 F.2d 661 (1970) (*per curiam*); *Travers v. United States,* 118 U.S.App.D.C. 276, 281, 335 F.2d 698, 703 (1964); *Cosgrove v. United States,* 224 F.2d 146 (9th Cir. 1955); *United States v. Flowers,* 255 F.Supp. 485 (E.D.N.C.1966); *United States v. Pappas,* 445 F.2d 1194, 1199 (3d Cir.) (dictum), *cert. denied,* 404 U.S. 984, 92 S.Ct. 449, 30 L.Ed.2d 368 (1971); *United States v. Perrone,* 161 F.Supp. 252, 258–59 (S.D.N.Y.

1958) (dictum). Given the rather uniform approach taken to this question, what considerations are adduced by the Government to persuade us to depart from this line of cases and to ignore the concerns of ordinary fairness that underlie them?

■ We are told that extending collateral estoppel to the multicount indictment context is inconsistent with the undisputed rule that acquittal on one count of an indictment does not preclude a jury from relying on the same evidence for proof of other counts. *United States v. Finkelstein,* 526 F.2d 517, 527 (2d Cir. 1975), *cert. denied,* 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976); *United States v. Sisca,* 503 F.2d 1337, 1344 n. 9 (2d Cir.), *cert. denied,* 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974).[12] Thus, verdicts on different counts of the same indictment returned by one jury at the same time are valid even if the results are inconsistent. *See, e. g., Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932); *United States ex rel. Rogers v. LaVallee,* 517 F.2d 1330, 1334 (2d Cir. 1975). But it hardly follows from the fact that a single jury in one trial is allowed to render inconsistent verdicts that a *second* jury in a *second* trial should be permitted to rely on the evidence rejected by the first.

■ We tolerate inconsistencies in unified jury verdicts in criminal cases, not be-

---

**11.** Inasmuch as Mespoulede was sentenced to time served after his conviction for conspiracy in the second trial, we think it is unlikely that the Government will undertake a third prosecution simply to impose the collateral consequences of a felony conviction. In the event that the United States Attorney does elect to retry the case, we deem it necessary to make a few observations concerning the evidence that is barred by our ruling today.

Clearly, testimony by Bonk, Duverglas, or anyone else to the effect that Mespoulede possessed, mixed, or bagged the cocaine on January 31 is precluded. But we also believe that the Government's assertion that the confessions to the DEA agents are admissible is flatly mistaken. A reading of both trial transcripts makes it unequivocally clear that the confessions referred to the January 31 transaction and no other. The jury necessarily rejected the veracity of this testimony in acquitting on the possession count.

Wholly apart from evidence of Mespoulede's personal possession of the drugs, Judge Motley instructed the jury that it could find Mespoulede guilty of Count 2 if it concluded that he aided and abetted the possession of cocaine on January 31. Under the terms of the charge, if the jury had believed that Mespoulede "knowingly associated himself in some manner with the illegal venture, actually participated in it as something he wished to bring about, or that he sought by his action to make it succeed," a conviction would have followed. Inasmuch as the question of how to apply collateral estoppel to the jury's judgment of acquittal for aiding and abetting was neither briefed nor argued, we will leave this question to the district court.

**12.** Similarly, in determining the sufficiency of the evidence to support a conviction on one count of an indictment, we may consider evidence on a count on which the jury acquitted. *See, e. g., United States v. Lubrano,* 529 F.2d 633, 636 n. 1 (2d Cir. 1975), *cert. denied,* 429 U.S. 818, 97 S.Ct. 61, 50 L.Ed.2d 78 (1976).

cause of any singular virtue we attribute to inconsistency, but rather out of deference to the nature of the jury and the role it plays in our jurisprudence. There is no question but that a jury in a criminal trial has the power to render a verdict of acquittal that is wholly at odds with the law and the facts. As we pointed out in *United States v. Maybury,* 274 F.2d 899, 902 (2d Cir. 1960), this notion has its roots in the fact that the jury was originally conceived of as "inscrutable." Although we no longer believe that a jury's pronouncements must be accepted as unquestioningly as the results of an ordeal by cold water or an oath of compurgation, *see* T. Plunkett, *A Concise History of the Common Law* 115–16 (5th ed. 1956), an "arbitral" element of jury decision-making survives. We recognize that the jury is in a sense the conscience of the community and can, for example, render a verdict to mitigate an overly severe punishment. *United States v. Maybury, supra,* 274 F.2d at 902. Similarly, in compromising in order to reach a unanimous verdict, a jury is often fulfilling its role as a cross-section of the community that it is supposed to represent. Occasional anomalies are the price of unanimity. *Id.* at 903.

Internal inconsistency, then, is not an end in itself, and it would be irrational to expand gratuitously the judicial tolerance of inconsistent verdicts to permit different juries in successive trials to reach contradictory results.[13] Allowing a second jury to reconsider the very issue upon which the defendant has prevailed serves no valuable function. · To the contrary, it implicates concerns about the injustice of exposing a defendant to repeated risks of convic-

tion for the same conduct, and to the ordeal of multiple trials, that lie at the heart of the double jeopardy clause. *See, e. g., Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

Reversed.

13. The only decision we have uncovered that lends support to the theory that collateral estoppel is inapplicable to retrials of multicount indictments is *United States v. Jones,* 404 F.Supp. 529, 544 (E.D.Pa.1975), *aff'd mem.,* 538 F.2d 321 (3d Cir. 1976). In *Jones,* however, the first jury *convicted* the defendant on the count that was retried, and the court pointed out that the jury's acquittal on a different count did not determine the issue sought to be precluded on retrial. *Id.* at 544 n. 4. Moreover, no attempt was made to distinguish between cases in which one jury has arrived simultaneously at

inconsistent verdicts and cases such as the one at bar.

There is also some language in *United States v. Maybury,* 274 F.2d 899, 905 (2d Cir. 1960), that could be construed to buttress the Government's argument. But that dictum merely noted that no case had been found in which collateral estoppel had been applied in this context. Moreover, the discussion in *Maybury* was focused on cases tried to the bench, in which the basis of the appeal was that an acquittal on one count could not stand with a conviction on another.