Maurice SABIN, Petitioner,

v.

Thomas ISRAEL and Bronson La
Follette, Respondents.

Civ. A. No. 82–C–669.

United States District Court,
E. D. Wisconsin.

Jan. 14, 1983.

Michael Yovovich, First Asst. State Public Defender, Madison, Wis., for petitioner.

Kirbie Knutson, Asst. Atty. Gen., Madison, Wis., for respondents.

## DECISION and ORDER

TERENCE T. EVANS, District Judge.

Maurice Sabin has filed a petition for a writ of habeas corpus. On October 1, 1978, Sabin was convicted of three offenses in the Circuit Court for Wood County; armed robbery while masked, attempted murder while masked (as party to a crime), and conspiracy to commit armed robbery while masked. The convictions were upheld by the Wisconsin Court of Appeals, *State v. Feela,* 101 Wis.2d 249, 304 N.W.2d 152 (C.A.1981). Sabin's petition for review was denied by the Wisconsin Supreme Court.

In his petition for habeas corpus Sabin attacks his conviction of conspiracy to commit armed robbery while masked, claiming that the conviction violates his constitutional right to be free of double jeopardy. In addition, he claims that the evidence was insufficient to support his conviction on the attempted murder charge *. In reviewing the issues in this case I have been aided by the excellent briefs submitted by counsel

---

* The first paragraph of Sabin's brief in support of his petition states that he challenges all three of his convictions. His petition and argument, however, only address the two convictions that will be discussed in this decision.

for the parties, particularly the one prepared by Michael Yovovich, a member of the State Public Defender's office.

The rather convoluted facts are set out as clearly as possible by the Wisconsin Court of Appeals in its opinion, and will not be repeated here except in skeletal fashion as they relate to each issue.

### I. *Double Jeopardy*

Sabin was convicted of conspiracy to rob the Bancroft Bank while armed and masked. Much of the state's case was based on the testimony of Sabin's son Jerry, who was granted immunity from prosecution. Young Sabin testified that he, his father, Douglas J. Feela and Dale Patchen formulated a plan to rob the bank. The plan involved going to another county to steal a car for use in the robbery. Jerry Sabin testified that the four drove to Waupaca, stole a van, drove it to Bancroft and parked it on a back road outside of the town. They then drove past the bank in Maurice Sabin's car, determined that it was too crowded to rob, decided that the money was probably in the vault in any case, and the robbery of the bank never came off that evening. The van was left where they had parked it until the next day, when they returned to the van. Patchen and Feela changed clothes and drove the van to the bank. The Sabins followed in Maurice Sabin's car. Both the van and the car circled the bank and left town. Outside of town, Patchen and Feela stated that they did not want to go ahead with the robbery because they "didn't like the situation." The van was driven into a ditch and abandoned.

Maurice Sabin presented an alibi defense, based on his own testimony and a number of witnesses on his behalf.

Prior to his trial in Wood County, Maurice Sabin was tried in Waupaca County for theft of the van and for operating it without the owner's consent (§§ 943.20 and 943.23, Wis.Stats.). Jerry Sabin also testified in this trial regarding the theft of the van, and Maurice Sabin also presented his alibi defense. Petitioner was acquitted of both charges.

In the Wood County proceedings, petitioner moved to suppress any evidence regarding the theft of the van, for which he had been acquitted, on the grounds that use of the evidence violated the doctrine of collateral estoppel, as incorporated into the double jeopardy clause by *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The trial court ruled that the testimony regarding the theft of the van would be permitted. The court also excluded from evidence the fact that Sabin was tried and acquitted on the charges in Waupaca County.

The doctrine of collateral estoppel is an element of the Constitution's prohibition against double jeopardy. *Ashe v. Swenson, supra.* When a claim is made that collateral estoppel prevents certain evidence from being admitted at trial, a court must determine what the first judgment decided and then must analyze how that determination bears on the second case. See *United States v. Mespoulede,* 597 F.2d 329 (2d Cir. 1979).

Respondents here argue that there is another element to the analysis, and that is a determination of whether the evidence goes to ultimate or evidentiary facts. They would have me rule that collateral estoppel is a bar only as to those items which are labeled as ultimate facts in the second trial. Some courts have embraced this distinction; see *United States v. Kills Plenty,* 466 F.2d 240 (8th Cir.1972), *cert. den.* 410 U.S. 916, 93 S.Ct. 971, 35 L.Ed.2d 278. Other courts, however, have rejected the distinction. See *Wingate v. Wainwright,* 464 F.2d 209 (5th Cir.1972); *United States v. Mespoulede, supra.*

Respondents analyze the facts here as follows:

"Here, the Waupaca County jury necessarily decided that the petitioner did not take the van. Had the petitioner been charged with and acquitted of only theft, it would have been arguable that the jury concluded that the petitioner took the van but that he lacked the requisite intent, that is, the 'intent to deprive the owner permanently of possession' of the

van. § 943.20(1)(a), Wis.Stats. The evidence was that the conspirators wanted to use a vehicle which could not be identified as theirs for the bank robbery (Waupaca: 59). There was no suggestion they intended to keep the van. If theft had been the only charge, the petitioner could not make a colorable collateral estoppel claim because the Waupaca County jury could rationally have based its acquittal on the state's failure to prove intent rather than failure to prove the taking of the van. In the Wood County proceeding, it was relevant that the van had been taken, regardless of whether it was taken with criminal intent.

"The Waupaca County jury did, however, also acquit the petitioner of operating a vehicle without the owner's consent (Waupaca: 244). The elements of that offense are intentionally taking and operating a vehicle without the owner's consent. § 943.23(1), Wis.Stats. The intent to permanently deprive the owner of the vehicle is not required. In the Waupaca County trial there was no question regarding either the ownership of the vehicle or the owner's lack of consent to its use by petitioner (Waupaca: 2, 3, 6). The petitioner presented an alibi defense (Waupaca: 96–160). Testifying in his own behalf, he stated that he had nothing to do with the van theft (Waupaca: 138). In acquitting the petitioner, the jury necessarily determined that he did not take and operate the vehicle in question." State's Brief, pp. 3, 4.

Respondents argue that because the theft of the van is simply one fact in the conspiracy it is not an ultimate fact in the second trial, and the introduction of evidence regarding the theft does not violate the double jeopardy clause.

Collateral estoppel issues arise in federal cases either on direct appeal of a federal conviction or in a habeas action to review a state conviction. In the latter, the doctrine is incorporated into the constitutional prohibition against double jeopardy. In federal cases, some courts prefer to state that "doctrinal collateral estoppel" requires reversal of a conviction without deciding whether the Constitution is violated. In *United States v. Keller*, 624 F.2d 1154, 1160 (3d Cir.1980), the court stated:

"There will undoubtedly be future cases in which a determination must be made as to the coextensiveness of constitutional collateral estoppel and doctrinal collateral estoppel. It may arise when plain error is asserted, when it is raised in habeas corpus as distinguished from direct appeal, or in consideration of the scope of the applicability of collateral estoppel to the states. None of these circumstances are presented by the facts or procedural posture of this case."

Regardless of how an estoppel claim is raised, that is, on direct or collateral appeal, the treatment of the issue is similar. The analysis is ordinarily closely tied to an examination of the facts established in the first prosecution and those litigated in the second. For example, in *Wingate, supra,* a habeas action in which the defendant was convicted of robbery, the prosecution presented evidence of two other robberies of which the defendant had been acquitted in an attempt to show a course of conduct. The Court of Appeals for the Fifth Circuit rejected any distinction between ultimate and evidentiary facts and held:

" . . . Where the state in an otherwise proper prosecution seeks for any purpose to relitigate an issue which was determined in a prior prosecution of the same parties, then the evidence offered for such a relitigation must be excluded from trial and the state must be precluded from asserting that the issue should be determined in any way inconsistent with the prior determination."

The facts in *Wingate* are, in my view, extreme. The prosecution attempted to present evidence of totally unrelated robberies, robberies of which the petitioner had been acquitted.

A closer question is presented in cases in which the offense of which a person was acquitted is merely related to the offense charged in the second trial. *United States v. Keller, supra,* was such a case. Keller

was convicted of conspiracy to distribute a non-narcotic controlled substance. At trial, evidence of Keller's participation in other drug deals was presented to undermine his defense of entrapment. One of the other events was the subject of a prior federal prosecution of which Keller was acquitted. The court in *Keller* relied on what it called the established doctrine of the circuit, and determined that the admission of the evidence was error and "fundamentally unfair."

Similarly, in another federal prosecution, *Mespoulede, supra,* Chief Judge Irving Kaufman speaking for the Court of Appeals for the Second Circuit rejected an argument based on a distinction between ultimate and evidentiary facts and found that the principle of collateral estoppel prevented the use of previously litigated facts in a second trial. Mespoulede was charged with possession of cocaine with the intent to distribute and with conspiracy to possess and distribute cocaine. He was acquitted of possession but the jury failed to reach a verdict on the conspiracy charge. On retrial, the judge allowed evidence of the incident for which he was acquitted to be presented as probative of his participation in the conspiracy. This, the court found, violated constitutionally-rooted considerations of fairness because it permitted the government to inject into the case a significant issue previously decided in the defendant's favor in the earlier proceeding.

A case which is remarkably similar to the one before me is *Green v. United States,* 426 F.2d 661 (D.C.Cir.1970). Green's trial ended in a mistrial when the jury could not reach a verdict. The judge directed a verdict of acquittal on one of the counts, unauthorized use of a vehicle. In the second trial, Green was convicted of robbery and assault. In that trial testimony regarding the theft of the car was presented. The Court of Appeals stated that under established principles of collateral estoppel, it was error to use the testimony.

█ Generally, if collateral estoppel does not prevent the use of evidence of an offense of which a person has been acquitted,

it is because the facts in the two proceedings are different. For instance, in *United States v. De La Torre,* 639 F.2d 245 (5th Cir., Unit A, 1981), the defendant was prosecuted on four counts of drug violations. He was acquitted of three and convicted on one. The conviction was reversed. Then he was charged with perjury, stemming from his testimony at the drug trial. He was found guilty on two counts and not guilty on two counts of perjury. He was then retried on the one drug count of which he had been previously convicted. His appeal arose out of the second drug trial which resulted in a conviction. He claimed that evidence from the perjury trial on counts for which he was acquitted should not have been used in the second drug trial. The court pointed out that the doctrine of collateral estoppel prevents an issue of ultimate fact that has been determined in one judgment from being relitigated in a future lawsuit between the same parties, and stated:

> "[t]he doctrine affects the introduction of evidentiary facts necessarily determined in a prior lawsuit...." At 248.

However, the court found that the facts determined in the perjury trial were not the same as those required for conviction on the drug charge and the second drug conviction was accordingly affirmed.

Similarly, in *Oliphant v. Koehler,* 594 F.2d 547 (6th Cir.1979), *cert. den.* 444 U.S. 877, 100 S.Ct. 162, 62 L.Ed.2d 105, a conviction was upheld. Oliphant was convicted of the rape of an 18-year-old Michigan State University student. The facts showed basically that he picked her up, engaged her in friendly conversation, took her to a bar and various other places before driving to a secluded spot where he raped her. His defense was that she consented to sexual intercourse and only became angry with him when he complained of her body odor. Under Michigan's "Similar Acts Statute" the prosecution presented testimony from three other women with whom Oliphant had displayed a similar pattern. In two of the cases, he had been tried for rape and acquitted. The court determined that the issue in

the trials which resulted in acquittals had been the consent of the victim, not Oliphant's actions. Because the victim was a different person in each case, principles of collateral estoppel, the court reasoned, did not prevent the use of the witnesses to show the pattern which Oliphant followed with his victims.

The case which most clearly supports the state's position is *United States v. Kills Plenty, supra.* The court stated there that the issue turned on whether the facts presented in the second trial were ultimate or evidentiary. Kills Plenty (the defendant's real name was Percy Kills Plenty) was tried and acquitted in the Rosebud Sioux Tribal Court of driving while under the influence of intoxicating liquor. He was subsequently indicted in the United States District Court for the District of South Dakota on a charge of involuntary manslaughter involving the same driving incident because it resulted in the death of Kills Plenty's passenger, Raymond Matthew Good Kill. Kills Plenty moved for dismissal of the federal charge on the grounds of double jeopardy or collateral estoppel, arguing that involved in the manslaughter charge was the element of driving while intoxicated. His motion was denied and the defense then moved to strike from the indictment language which stated "by operating or driving a motor vehicle while under the influence of intoxicants." That motion was also denied. In addition, the jury was instructed that it is unlawful to drive while intoxicated. Kills Plenty was convicted. In sustaining the conviction, the Court of Appeals for the Eighth Circuit observed that it was not persuaded that the two cases "share an ultimate factual issue." The question of intoxication was not of ultimate significance in the second case.

The only case from this circuit on the issues appears to be a direct appeal which predated *Ashe v. Swenson, United States v. Phillips,* 401 F.2d 301 (7th Cir.1968). Phillips was charged with selling heroin on July 14, selling heroin on July 17, and facilitating the sales. He was found guilty in a bench trial of the July 17 offense and not guilty of the others. The finding was set aside and he was retried before a jury on the July 17 sale. The judge allowed the government to present evidence of the July 14th incident and refused to allow evidence of the acquittal. Relying on an analysis of the probative value of the evidence versus its prejudicial effect, the court determined that admission of the evidence was an abuse of discretion.

■ I am persuaded that the better reasoned cases reject the simplistic labeling of facts as evidentiary or ultimate as a condition precedent to deciding whether collateral estoppel applies. These cases, instead, resolve the question by analyzing whether the issue introduced in the second proceeding was determined in a prior proceeding. In *Keller, Wingate* and *Mespoulede,* the issue introduced in the second trial (the defendant sold drugs before in *Keller,* he robbed before in *Wingate,* and he possessed cocaine before in *Mespoulede*) had to be true for the government to get a benefit or, more importantly, for the defendant to suffer a detriment. Because a prior judicial proceeding had found that the defendant had not committed the act (assuming, of course, that a not guilty finding means the defendant did not commit the crime as opposed to the government's inability to satisfy a trier of fact beyond a reasonable doubt that he had done so), the inherent unfairness to which Judge Kaufman referred is evident. The defendant would have had to, for a second time, attempt to show that he did not commit the act. This is the position that Maurice Sabin found himself in. As part of the conspiracy charge, the state elected to try to establish that he participated in the unlawful taking of the van, an act he had been judicially exonerated of committing one month before. As such, the admission of the evidence was error.

Unfortunately for Mr. Sabin, the analysis of his claim does not end with a finding that error was committed. To benefit him now, the error must be viewed as prejudicial. I have little difficulty concluding, however, that under the facts of this case the error was harmless.

First of all, the state could have introduced testimony that a van was to be used and abandoned after the robbery. The fact that the van was not owned by, registered in the name of, or otherwise traceable to Sabin or his confederates could have been directly introduced rather than indirectly by evidence that the van was stolen. Furthermore, the type of getaway vehicle, be it a van or a BMW, was not of overwhelming significance when one looks to the real issue, i.e., did the defendant conspire to rob the bank. In addition, there was evidence that Feela and Patchen had shown the petitioner some clothing which they thought would be appropriate to wear during the robbery and that the men looked at guns available for use during the robbery. They also, according to the testimony, drove around the bank and along a proposed escape route. Jerry Sabin also testified that they had gone to Stevens Point first to look for a car to steal but that they did not find one there. He testified that they stopped in a small town and looked at a pickup truck which had its engine running but which they did not take because it did not have enough gas in the tank.

Considered in light of the entire line of evidence on the conspiracy charge, I find that the fact that the van was stolen (or operated without the owner's consent), although improperly admitted into evidence, was harmless.

### Insufficient Evidence

Sabin also argues that there was insufficient evidence to convict him of aiding and abetting in the attempted murder of Jeffrey Flick, an attendant at a gas station near the liquor store which the men ultimately robbed. The robbery of the liquor store took place in Wisconsin Rapids on the same day as the aborted bank robbery. Feela entered the store with a gun while the others waited in the car to pick him up. As he was leaving the store, Feela shot at Flick. When they heard the shot, the others drove off, leaving Feela behind.

The Wisconsin Court of Appeals stated that under Wisconsin law Sabin is responsible for the natural and probable consequences of his acts; that is, that his willingness to assist in the robbery demonstrated his willingness to assist in the natural consequences of the robbery. The Wisconsin jury instruction to that effect, however, was not given at Sabin's trial. The Court of Appeals ruled that Sabin's failure to request the jury instruction was a waiver of any claim of error.

In this court, Sabin's argument seems to be that because the Wisconsin jury instruction regarding the natural and probable consequences of a crime was not given, he can be convicted only upon evidence of actual aiding or abetting or actual standing ready to aid and abet.

It is, of course, out of the latter proposition—standing ready to aid and abet—that the law regarding the natural and probable consequences flows. From the evidence as presented at trial, the jury could have concluded that Sabin was actually standing ready to aid and abet.

Furthermore, as the Court of Appeals ruled, Sabin waived his objection to the failure to give the instruction. Under Wisconsin law, the failure to object to jury instructions constitutes a waiver of alleged defects in the instructions. *Kutchera v. State,* 69 Wis.2d 534, 230 N.W.2d 750 (1975). A defendant will be relieved of his waiver only if instructions given misstate the law or constitute plain error. *Lambert v. State,* 73 Wis.2d 590, 243 N.W.2d 524 (1976).

In this case the Court of Appeals determined that Sabin had waived any objection he might have to the trial court's failure to give the instruction. Therefore, under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), review of the issue is precluded here.

IT IS THEREFORE ORDERED that Sabin's petition is denied.